

Barry M. Landy, Partner
(612) 361-8224
BML@ciresiconlin.com

225 South 6th St.
Suite 4600
Minneapolis, MN 55402
612-361-8200

ciresiconlin.com
(612) 361-8200

**VIA ECF**

November 21, 2022

The Honorable Barbara C. Moses
United States Magistrate Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *PRCM Advisers LLC, et al. v. Two Harbors Inv. Corp.*, No. 1:20-cv-05649-LAK-BCM

Dear Judge Moses:

      I write on behalf of Plaintiffs ("Pine River") to compel Defendant ("Two Harbors") to withdraw improper demands to claw back three documents and to produce fourteen others covering the same subject matter (collectively, the "Disputed Documents").[1] Each of the Disputed Documents concern the Second Amendment to the Management Agreement ("MA"), an amendment unanimously approved by Two Harbors' independent directors that clarified existing rights over intellectual property ("IP"). For at least two reasons, Two Harbors has waived any attorney-client privilege over the Disputed Documents. **First**, Two Harbors waived privilege by placing the Disputed Documents prominently at issue in this suit. Two Harbors has alleged that its independent directors had "no access" to information about the Second Amendment besides what Pine River provided, and that Pine River "misled" the independent directors into approving the plainly worded Second Amendment to "co-opt ownership" of IP. Now, Two Harbors aims to conceal the very documents that refute this allegation. The assertedly-privileged materials show that Two Harbors reviewed and vetted the Second Amendment and had access to information not provided by Pine River, including advice from inside and outside counsel. **Second**, Two Harbors has waived privilege over the subject matter of the Disputed Documents by selectively producing, and questioning witnesses about, privileged Second Amendment materials, including a document revealing advice that Two Harbors obtained from outside counsel. The Court should compel Two Harbors to produce the Disputed Documents and, under ¶ 15(h) of the Protective Order, reopen the deposition of Stephen Kasnet for related questioning.

## Background

      **The parties execute the Second Amendment to the MA.** Two Harbors relied wholly on Pine River's employees and IP to operate its business. In 2014, the parties discussed expanding Two Harbors' investment guidelines to include investments in commercial real estate ("CRE") financing. Two Harbors' management presented the CRE initiative to its Board in October 2014. Management informed the Board that "[IP] licensing or other appropriate arrangements between Two Harbors and PRCM would be established to share in CRE platform build-out costs, subject to terms and economics approved by the Board." (Ex. 2 at 8; *see also* Ex. 3 at 43-50.) Management

---

[1] Exhibit One to this motion contains: (1) a table identifying the Disputed Documents by entry in Two Harbors' privilege log and, for those produced, Bates numbers; (2) the Disputed Documents that Two Harbors has produced in full or with improper redactions; and (3) excerpts of Two Harbors' privilege log containing the Disputed Documents.

previewed that it would ask the Two Harbors' Board to take several steps at a subsequent meeting, including to "[a]pprove an amendment to the Two Harbors [MA] to clarify ownership rights with respect to [IP]." (Ex. 2 at 9.)

The parties then crafted an amendment clarifying that all IP developed by Pine River personnel during the MA would belong to Pine River, which Two Harbors' General Counsel, Rebecca Sandberg, stated at the time "largely mirrors the way it works in practice now." (Ex. 4.) The amendment was also consistent with Pine River's contracts with employees; every Pine River employee who worked on Two Harbors' business assigned all IP developed by them to Pine River. (*See, e.g.*, Ex. 5 ¶ 2.) On November 3, after discussion with Sandberg, the Board unanimously approved the Second Amendment, concluding "it [was] advisable and in the best interests of the Company to amend the [MA] in order to clarify certain [IP] matters as among the Company and the Manager." (Ex. 6, App'x A at 1; Ex. 7 at 178-85.) The Second Amendment contained two straightforward terms: (1) "[a]ll Intellectual Property [broadly and expressly defined in the Second Amendment] created or developed by" Pine River personnel would be the "sole and exclusive property" of Pine River; and (2) Two Harbors had a license to use that IP during the MA. (Ex. 8.) Two Harbors confirmed the parties' understanding that Pine River owns all IP in SEC filings both at the time and years later. (*See, e.g.*, Ex. 9; Ex. 10 (excerpt of Two Harbors' 2019 Form 10-K).)

**Two Harbors misappropriates Pine River's IP and alleges in this lawsuit that it was "misled" into executing the Second Amendment.** After terminating the MA (thus ending its license to use the IP), Two Harbors misappropriated the IP Pine River had developed—IP without which Two Harbors could not have operated post-termination. (Ex. 11 at 68.) Since then, Two Harbors has advanced a series of meritless, ever-shifting arguments as to why the Second Amendment should not be enforced. Its initial positions, made in correspondence dated July 3, 2020, were that Two Harbors owned the IP because its personnel were not employees of Pine River, and alternatively, that the Second Amendment was unconscionable. (*See* Ex. 12 at 3-4.) Then, in moving to dismiss Pine River's complaint, Two Harbors argued that it owned the IP because it purportedly "paid . . . to develop" it. (ECF No. 39 at 26.) The Court rejected these arguments, reasoning that whether Two Harbors "paid for" development was irrelevant because IP ownership was "governed by the [MA]." (ECF No. 59 at 29 n.127.) Two Harbors then developed a new story, alleging "the Second Amendment was [Pine River's] underhanded attempt to co-opt ownership" of the IP that Pine River developed, (ECF No. 93 at 106 ¶ 117), and that Pine River "misled" the independent directors into approving it, (*id.* ¶ 119). Straining to justify how Two Harbors' sophisticated independent directors could have been misled by the Second Amendment—a two-page document written in plain language—Two Harbors alleged they "**did not have access to any information regarding the attempt other than that provided by [Pine River].**" (*Id.* at 107 ¶ 121 (emphasis added).) Two Harbors cites the Second Amendment as grounds to recover on 11 of its 12 counterclaims and to rescind the MA, disgorge Pine River's profits, and recover restitution and "resulting damages." (*Id.* ¶¶ 160-244.)

After discovery revealed that Two Harbors accessed information <u>not</u> "provided by [Pine River]"—including advice from its General Counsel and outside counsel—Two Harbors pivoted again. This time, Two Harbors claims that Pine River suggested that the scope of the Second Amendment—contrary to its unambiguous language—would extend only to IP related to CRE. This made-for-litigation ploy is nothing more than an attempt to justify Two Harbors' willful misappropriation of Pine River's IP. Two Harbors' "CRE-only" theory was not mentioned in its

The Honorable Barbara C. Moses                                                                                      Page 3

notice of termination of the MA or its pleadings. Indeed, Two Harbors' counterclaim lacks a single reference to the Second Amendment's "scope." (*Cf. id.* ¶¶ 115-21.)

**Two Harbors relies on certain communications involving advice it received on the Second Amendment, and claws back others.** During depositions of Pine River witnesses, Two Harbors has elicited testimony about emails in which Sandberg rendered legal advice about the proposed Second Amendment. First, Two Harbors asked its former CEO and current Pine River partner, Tom Siering, about an email in which he asked Sandberg for advice on proposed Second Amendment language. (*See* Ex. 13 at 265-66 ("This is me soliciting input from our general counsel around that, yes."); Ex. 14.) Then, while deposing Pine River's CEO, Brian Taylor, Two Harbors asked about the same email, plus an email from Sandberg to Two Harbors' personnel in which she relayed extensive advice on Second Amendment "IP matters" that she had analyzed "with outside counsel." (Ex. 15 at 91-99; Ex. 16.)

Meanwhile, Two Harbors has claimed privilege over closely related documents containing legal advice about the Second Amendment. On October 21, Two Harbors produced three versions of an email thread in which Sandberg sought outside legal advice on the Second Amendment—the same legal advice summarized in the email used during Taylor's deposition. (See Ex. 1 at TWOHARBORS_01189407, 01189413, 01189418.) On October 26, Pine River deposed Stephen Kasnet, Chairman of Two Harbors' Board. Pine River introduced as an exhibit one of these emails, to which Two Harbors asserted privilege, claiming it would be "clawing that document back." (Ex. 3 at 50-54.) The parties met and conferred regarding Two Harbors' privilege designations as to the Disputed Documents by telephone for twenty-six minutes on November 16, 2022. Kyle Wislocky, Jacob Siegel, and Sharon Lee represented Pine River. DeMario Carswell and Wrenne Bartlett represented Two Harbors. The parties remain at an impasse, necessitating this motion.

**Argument**

The party asserting attorney-client privilege carries the burden to prove every element of the privilege, including that there has been no waiver. *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 428 (S.D.N.Y. 2013). An "implied" or "at-issue" waiver arises when a party uses privilege "both as 'a shield and a sword' by 'partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny.'" *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 106 (S.D.N.Y. 2009) (citations omitted). "[T]he privilege holder need not attempt to make use of a privileged communication to implicate waiver—the proponent 'may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication.'" *S.E.C. v. Honig*, 2021 WL 5630804, at *11 (S.D.N.Y. Nov. 30, 2021). Waiver is most appropriate when, as here, the privilege holder injects its own intent or state of mind into the litigation. *E.g.*, *Newmarkets Partners*, 258 F.R.D. at 108-09; *MBIA Ins. Corp v. Patriarch Partners VIII, LLC*, 2012 WL 2568972, at *7-8 (S.D.N.Y. July 3, 2012) (privilege holder's introduction of witness' intent and understanding of agreement placed communications at issue).

Two Harbors has waived privilege over the Disputed Documents for at least two reasons. **First**, Two Harbors has placed the Disputed Documents at issue by injecting its own knowledge and access to legal advice on the Second Amendment into this case. Two Harbors alleges that Pine River "misled" its Board of Directors into signing the Second Amendment and that its independent

directors "did not have access to any information about the Second Amendment other than that provided by . . . Pine River." (ECF No. 93 at 105-07 ¶¶ 115-21.) And in Two Harbors' view, these allegations carry momentous import. For one, Two Harbors seeks to declare the Second Amendment void—ostensibly, to defeat Pine River's IP claims and to reduce its damages on others. (*Id.* at 128 ¶¶ 214-15, at 135 ¶ 7.) But Two Harbors is also using its knowledge and intent on the Second Amendment offensively: as a basis to rescind the MA, to disgorge Pine River's profits and "financial benefits," and to recover restitution and other "resulting damages." (*E.g.*, *id.* ¶¶ 162, 168, 174, 181, 189, 222-23, 228, 236, 244.)

Basic fairness and settled law require that Two Harbors produce the Disputed Documents because they are essential to discrediting its allegations. *E.g.*, *MBIA Ins. Corp.*, 2012 WL 2568972, at *7-8; *Newmarkets Partners*, 258 F.R.D. at 108-09. The Disputed Documents demonstrate that Two Harbors was not "misled" and that it was not deprived of "access to any information other than that provided by . . . Pine River." (*Id.* ¶ 121.) To the contrary, Two Harbors was advised both by Sandberg (who remains its General Counsel today and who is party to countless communications withheld as privileged based on claims of "adversity" with Pine River), and outside counsel with whom Sandberg consulted. The Disputed Documents will reveal that Sandberg advocated for the Second Amendment and shared the same understanding of its "scope" as Pine River. (*See, e.g.*, Ex. 1 at TWOHARBORS_01189407 (email from outside counsel explaining problems inherent in "joint ownership" of IP and agreeing that licensing arrangement laid out in Second Amendment is a "cleaner solution").).

**Second**, Two Harbors has waived privilege related to drafting and negotiating the Second Amendment through its selective disclosure and affirmative use of those materials. "[W]hen there has been a selective disclosure of attorney-client communications in the litigation, courts typically find the party has waived privilege as to all documents pertaining to the subject disclosed." *Stolarik v. N.Y. Times Co.*, 2019 WL 4565070, at *3 (S.D.N.Y. Sept. 20, 2019) (collecting cases and finding subject-matter waiver); *see also MBIA Ins. Corp.*, 2012 WL 2568972, at *8. Weeks ago, Two Harbors produced various communications from Sandberg containing advice in connection with negotiating the Second Amendment. (*E.g.*, Exs. 4, 14.) Not only did Two Harbors not assert privilege over certain of these documents, but it also has cherrypicked a subset of those documents for use in depositions in an apparent attempt to develop its theory that Pine River "misled" it. For example, Two Harbors has questioned witnesses about emails soliciting legal advice related to the proposed Second Amendment, but redacted later emails, in the same thread, that were prompted by that solicitation. (*Compare* Exs. 4, 14, *with* Ex. 1 at TWOHARBORS_01296497.) And in its notice of recall, Two Harbors asserted privilege over communications between Sandberg and outside legal counsel, yet a day later it questioned a Pine River witness about an email in which Sandberg discusses and repackages that same advice. (*Compare* Ex. 16, *with* Ex. 1 at TWOHARBORS_01189407, TH_01189413, 01189418.) Two Harbors' knowing disclosure and selective reliance on privileged communications are a textbook subject-matter waiver.

\*   \*   \*

For the above reasons, Two Harbors should be compelled to produce the Disputed Documents. Further, pursuant to ¶ 15(h) of the Protective Order, the Court should reopen the deposition of Stephen Kasnet for questioning related to these documents.

The Honorable Barbara C. Moses  Page 5

Respectfully submitted,

   *s/Barry M. Landy*
Barry M. Landy
**CIRESI CONLIN LLP**
225 S. 6th St., Ste. 4600
Minneapolis, MN 55402
Phone: (612) 361-8224
bml@ciresiconlin.com
*Counsel for Plaintiffs*

cc:    All counsel of record (by ECF)