

Daniel Roeser
+1 212 459 7276
DRoeser@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

November 28, 2022

**VIA ECF**
Magistrate Judge Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

**Re: PRCM Advisers LLC, et al. v. Two Harbors Investment Corp., Case No. 1:20-cv-05649-LAK**

Dear Judge Moses:

We represent Defendant Two Harbors Investment Corp. ("Two Harbors") in the above-referenced matter. We write in opposition to Plaintiffs' ("Pine River's") letter motion (ECF No. 201, the "Motion") that asks this Court to find that Two Harbors has waived the attorney-client privilege with respect to 17 documents (the "Challenged Documents") concerning ownership of intellectual property for Two Harbors' prior commercial real estate initiative ("CRE Initiative") and to re-open the deposition of the Chairman of Two Harbors' Board of Directors, who does not appear on **any** of the Challenged Documents. We also write to cross-move for a protective order as to the Challenged Documents.

In short, Pine River does not contest that the Challenged Documents are privileged. Pine River argues that Two Harbors has waived that privilege because (1) Two Harbors alleges that its Independent Directors did not have access to any information about the Second Amendment to the Management Agreement (the "Second Amendment") other than that provided by Pine River, which misled the Two Harbors Board of Directors into signing the Second Amendment (Mot. 3-4), and (2) Two Harbors has selectively disclosed and affirmatively used certain of the Challenged Documents (id. 4). Pine River is wrong on both counts. On their face, the Challenged Documents do not go to the question of whether Pine River misled Two Harbors' Board of Directors – which is the allegation in Two Harbors' Counterclaims – or even whether Two Harbors' Independent Directors had access to information about the Second Amendment. And Two Harbors has not selectively disclosed and used privileged materials.

For the foregoing reasons and those that follow, this Court should deny Pine River's Motion and grant Two Harbors' cross-motion for a protective order.

## Background

In October 2014, Pine River partner Tom Siering (who also served as Two Harbors' Chief Executive Officer) first presented the CRE Initiative to the Two Harbors Board of Directors. (ECF No. 203-2 at -4712.) Pine River partner Brian Taylor (who then served as Two Harbors' Chairman of the Board) and Pine River partner Bill Roth (who then served as Two Harbors' Chief Investment Officer) also were present. At that meeting, Two Harbors' Board of Directors was told that it would be necessary to create "IT infrastructure" and "proprietary tools" to support the CRE Initiative and that "intellectual property licensing or other appropriate arrangements between Two Harbors and PRCM would be established to share in CRE platform build-out costs." (ECF No. 203-2 at -4715, -4720.) The Two

Harbors Board of Directors was then informed of a forthcoming amendment to the Management Agreement to "clarify" ownership rights with respect to intellectual property needed for the CRE Initiative. (Id. at -4721.) Indeed, the contemporaneous documents make clear that the amendment to the Management Agreement was presented as part of the CRE Initiative and that none of the Pine River partners in the boardroom – all of whom owed Two Harbors fiduciary duties as directors and/or officers – informed the Independent Directors that the scope of the amendment went beyond the intellectual property needed for the CRE Initiative. (Id.)

In November 2014, Pine River partner Tom Siering again presented the CRE Initiative to the Two Harbors Board of Directors. Again, Pine River partners Brian Taylor and Bill Roth also were present. (ECF No. 203-6 at -9419.) At that meeting, the Two Harbors Board of Directors was asked to approve an amendment to the Management Agreement. (Id. at -9420.) Again, the contemporaneous documents make clear that the amendment was presented as part of the CRE Initiative and that none of the Pine River partners in the boardroom – all of whom again owed Two Harbors fiduciary duties as directors and/or officers – informed the Independent Directors that the scope of the amendment went beyond the intellectual property needed for the CRE Initiative. (Id.) Following those presentations, the Two Harbors Board of Directors approved what became the Second Amendment.

For nearly six years, Pine River never suggested that the Second Amendment applied to any intellectual property beyond the CRE Initiative. Then, on June 18, 2020 – i.e., the day after Pine River initially sued Two Harbors – Pine River asserted for the first time that the Second Amendment applied to Two Harbors' intellectual property.[1]

Two Harbors responded to Pine River's assertion. Contrary to Pine River's claims in its Motion, Two Harbors' position has not changed. In its Counterclaims, Two Harbors alleged that "PRCM, Pine River, the Former Chairman, the Former CEO, and the Former CIO were responsible for misleading the Independent Directors as to the Second Amendment and for failing to inform the Independent Directors of PRCM's and Pine River's attempt to co-opt ownership of 'intellectual property' developed and paid for by Two Harbors." (ECF No. 89 ¶ 119.)

Since then, Two Harbors has sought discovery into its Counterclaims, including its allegations that Pine River represented that the scope of the Second Amendment did not go beyond the intellectual property needed for the CRE Initiative. Pine River apparently takes issue with Two Harbors' use of e-mails with Rebecca Sandberg, Two Harbors' general counsel, during the depositions of Mr. Taylor and Mr. Siering. The e-mail from Ms. Sandberg with which Pine River takes issue supports the scope of the Second Amendment as limited to the CRE Initiative — i.e., "for [Two Harbors] to create a definitive plan for how to handle any IP rights **for the CRE platform.**" (ECF No. 203-16 (emphasis added).) Two Harbors' questioning of Mr. Taylor and Mr. Siering concerned whether they had the same understanding. Two Harbors did not use privileged legal advice as a sword or a shield. Indeed, privileged legal advice had **nothing** to do with Two Harbors' use of the e-mails at issue or Two Harbors' questioning of Mr. Taylor or Mr. Siering.

[1] Pine River asserts that "Two Harbors confirmed the parties' understanding that Pine River owns all IP in SEC filings both at the time and years later." (Mot. 2.) Two Harbors' SEC filings say no such thing, as the witnesses whom Pine River questioned about the filings (but whose testimony Pine River failed to attach) made clear.

That is not surprising. Two Harbors' claims with respect to the Second Amendment concern whether Pine River misrepresented to the Two Harbors Board of Directors the purpose (i.e., the scope) of the Second Amendment, including the benefit of the Second Amendment to Pine River, in what was a direct conflict of interest between Pine River and Two Harbors' shareholders. The Challenged Documents do not go to that fact question.

**Argument**

As discussed above, Pine River does not contest that the Challenged Documents are privileged (see supra at 1), and Two Harbors has not waived that privilege. Indeed, the subject matter waiver that Pine River seeks is an extreme measure that is reserved for rare circumstances that bear no resemblance to the facts here. See Freedman v. Weatherford Int'l Ltd., No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 3767034, at *3 (S.D.N.Y. July 25, 2014) (denying motion to compel where party did not engage in selective, manipulative, and strategic use of evidentiary privileges).

**First**, there is no "implied" or "at-issue" waiver here. (See Mot. 3.) Pine River argues that "Two Harbors has placed the [Challenged] Documents at issue by injecting its own knowledge and access to legal advice on the Second Amendment into this case." (Id.) Two Harbors did no such thing. As Pine River admits: "An implied or at-issue waiver arises when a party uses privilege both as a shield and a sword by partially disclosing privileged communications or affirmatively relying on them to support its claim or defense and then shielding the underlying communications from scrutiny." (Id.) Two Harbors is not relying on privileged communications to supports its claims, much less using them as a shield and a sword. (see supra at 2.) Two Harbors alleges "PRCM, Pine River, the Former Chairman, the Former CEO, and the Former CIO were responsible for misleading the Independent Directors as to the Second Amendment and for failing to inform the Independent Directors of PRCM's and Pine River's attempt to co-opt ownership of 'intellectual property' developed and paid for by Two Harbors." (ECF No. 89 ¶ 119.) Privileged communications have no bearing on that allegation. Nor is Two Harbors "inject[ing] its own intent or state of mind into the litigation." (Mot. 4.) Two Harbors is making allegations about, and seeking discovery of, Pine River's (mis)representations.

Moreover, the Challenged Documents are not "essential to discrediting [Two Harbors'] allegations." (Id.) None even relates to Pine River's misrepresentations to Two Harbors' Independent Directors. Pine River mischaracterizes the Challenged Documents as showing that "[Ms.] Sandberg advocated for the Second Amendment and shared the same understanding of its 'scope' as Pine River." (Id.) The Challenged Documents, however, concern privileged legal advice for a hypothetical intellectual property ownership agreement related to the CRE Initiative. (ECF No. 203-1 at TWOHARBORS_01189407.) In fact, the very e-mail in which, according to Pine River, "[Ms.] Sandberg discusses and repackages that same advice" (Mot. 4) makes clear that Ms. Sandberg is describing the CRE Initiative (see supra at 2). Therefore, the Challenged Documents do not show that Ms. Sandberg, much less the Independent Directors, had the same understanding of the scope of the Second Amendment as Pine River.

**Second**, there is no waiver through "selective disclosure and affirmative use" of the Challenged Documents. Pine River argues that Two Harbors has "cherrypicked" a subset of communications from Ms. Sandberg concerning the Second Amendment "for use in depositions in an apparent attempt to develop its theory that Pine River 'misled' it." (Mot. 4.) Pine River points to one document – i.e., an e-

mail that makes clear that Ms. Sandberg is describing the CRE Initiative (see supra at 2) – that Two Harbors used to question Mr. Taylor about whether he spoke with Ms. Sandberg concerning the allocation of intellectual property ownership rights in connection with the CRE Initiative and a separate document to question Mr. Siering about whether he proposed the language of the Second Amendment. (ECF No. 203-14.) Two Harbors did not selectively rely on any privileged communications.

Further, even if Two Harbors disclosed privileged information, such a disclosure does not result in a subject matter waiver. "[T]he mere fact that a party makes a partial disclosure of privileged or protected information in a deposition does not result in a subject-matter waiver because there is no use of the testimony by the party holding the privilege." Mitre Sports Int'l Ltd. v. Home Box Off., Inc., 304 F.R.D. 369, 372 (S.D.N.Y. 2015); see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 2020 WL 3034792, at *5 (S.D.N.Y. June 5, 2020) (rejecting claims of subject matter waiver where there was no showing that privilege holder had sought to rely on communication "to influence a decision maker" – e.g., to use in court testimony or in support of summary judgment). There has been no specific waiver by Two Harbors, let alone a subject matter waiver.

**Third**, there is no basis to reopen the deposition of Stephen Kasnet, the Chairman of Two Harbors' Board of Directors. Mr. Kasnet was not a recipient of the Challenged Documents. Moreover, Pine River's counsel already questioned Mr. Kasnet about his knowledge of the Second Amendment, including the statements of Mr. Siering and Ms. Sandberg concerning the Second Amendment, questions that Mr. Kasnet answered. (ECF No. 203-3.) Under such circumstances, reopening a deposition for questioning on a specific document is not appropriate. See, e.g., Complex Sys., Inc. v. ABN Amro Bank N.V., 279 F.R.D. 140, 151 (S.D.N.Y. 2011) (finding limited additional document disclosures did not warrant reopening of any depositions and denying leave to re-depose witness despite counsel's "overbroad" instructions not to answer questions because plaintiff "had ample opportunity to adduce" relevant information); FFP, LLC v. Xaxis Us, LLC, 2016 WL 3636660, at *1 (S.D.N.Y. June 29, 2016) (denying leave to re-depose witness where party had opportunity to inquire about substance of clawed-back e-mail and opposing counsel did not instruct witness not to answer).

* * *

For the foregoing reasons, Two Harbors respectfully requests that this Court deny Pine River's Motion and grant Two Harbors' cross-motion for a protective order.

Respectfully submitted,

*/s/ Daniel Roeser*

Daniel Roeser
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018
212-813-8800
droeser@goodwinlaw.com

cc: Counsel of record via ECF

