

Daniel Roeser
+1 212 459 7276
DRoeser@goodwinlaw.com

Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018

goodwinlaw.com
+1 212 813 8800

December 13, 2022

**VIA ECF**
Magistrate Judge Barbara Moses
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 740
New York, NY 10007

**Re:    PRCM Advisers LLC, et al. v. Two Harbors Investment Corp., Case No. 1:20-cv-05649**

Dear Judge Moses:

Two Harbors respectfully submits this reply letter in further support of its letter motion to compel the production of documents responsive to Request Nos. 161 and 162 (ECF No. 228, the "Motion").[1]

All that the briefing of this Motion has "laid bare" is Pine River's desperation to keep this Court and Two Harbors from seeing the Blackface Photo.  The facts are straightforward:  (1) Pine River waived any objection to producing the Blackface Photo; (2) the Blackface Photo is relevant to the parties' claims and defenses in any event; (3) production of the Blackface Photo pursuant to the Protective Order is not "harassing" to Pine River, which has publicly described (repeatedly) the conduct that the photo depicts; (4) Pine River's premature merits arguments are not a basis to deny discovery of the Blackface Photo and, even if this Court were to consider them, are wrong on the facts and the law; and (5) neither this Court nor Two Harbors can rely on Pine River's production of documents responsive to the Requests given Pine River's failure to search for and identify the Blackface Photo and, therefore, further searches are required.

**First**, Pine River has waived any objection to producing the Blackface Photo, other photographs of Mr. Taylor in blackface, and any other documents concerning alleged improper conduct by Mr. Taylor. Pine River does not dispute that it failed to object on relevance grounds to Request No. 162, which called for documents concerning "alleged improper conduct by Brian Taylor," including "allegations that Brian Taylor [] dressed in blackface."  (Def. Ex. A at 34; Def. Ex. B at 170.)  Nor did Pine River object on the ground that the Request was "harassing."  (Def. Ex. B at 170.)  Rather, Pine River agreed to conduct a search for responsive documents.  (Id.)  As recently as November 4, after Two Harbors raised Pine River's apparent failure to produce documents responsive to the Requests, Pine River reassured Two Harbors that it had been "running the search terms that Two Harbors requested that Pine River run against all custodial email **and conduct[ed] targeted searches**."  (Def. Ex. D at 1 (emphasis added).) Pine River tried to withdraw its agreement to search for documents only **after** finding the Blackface Photo.  A party cannot promise to search for responsive documents and then refuse to produce the responsive documents that it

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.  Each exhibit attached to the Motion will be cited as "Def. Ex. __."  Two Harbors also is attaching new Def. Exs. H and I to this reply.  Pine River's opposition to the Motion (ECF No. 235) will be cited as the "Opposition."  Pine River also has filed a cross-motion for a protective order (ECF No. 231), which will be cited as the "Cross-Motion," and each exhibit thereto will be cited as "Pls.' Ex. __."  Two Harbors' opposition to the Cross-Motion (ECF No. 236) will be cited as the "Cross-Motion Opposition."

The Honorable Barbara Moses
Page 2

finds, particularly where the motivation is to avoid producing damaging evidence.[2]

**Second**, Pine River's "relevance" argument is meritless.  Rule 26 permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense."  Am. Fed'n of Musicians of the United States & Canada v. Sony Music Ent., Inc., 2016 WL 2609307, at *3 (S.D.N.Y. Apr. 29, 2016) (Moses, J.) (quoting Fed. R. Civ. P. 26(b)(1)).  The starting point to identify claims and defenses is the parties' pleadings.  Pine River simply ignores the pleadings because they conclusively establish relevance.  Pine River does not dispute that the pleadings include (1) allegations that conduct by Pine River and its partners, including Mr. Taylor dressing in blackface, created reputational risk for Two Harbors and (2) denials of those allegations by Pine River.  (See Mot. 1-2; see also ECF No. 97 ¶ 124; SAC ¶ 89(a).)  Two Harbors is entitled to test the allegations and denials through discovery.  Indeed, Pine River continues to minimize the severity of Mr. Taylor's conduct, criticizing Two Harbors' use of the term "blackface" and refusing to use it.  (See Opp. 1.)  That is consistent with how Pine River's witnesses have testified: They admit that Mr. Taylor is a White CEO, that he dressed as a Black rapper, and that he darkened his face in doing so; but they decline to call that "blackface."  (Cross-Mot. Opp. 2 & n.3.)  The photo will be highly probative in resolving which side's description of Mr. Taylor's conduct is more accurate.

**Third**, Pine River argues that production of the Blackface Photo is "harassing."  (Opp. 2.)  Under Federal Rule 26(c), Pine River bears the burden of showing that "disclosure will result in a clearly defined, specific and serious injury."  John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (internal quotation marks omitted); (see also Cross-Mot. Opp. 2-3.)  Moreover, since there already is a Protective Order in place (see ECF No. 105 ("PO")), Pine River must show that it will suffer serious injury **notwithstanding** that Order.  See John Wiley, 298 F.R.D. at 187-88.

Pine River cannot make that showing.  To keep the Blackface Photo confidential, Pine River simply has to designate it as such under the Protective Order.  (See PO ¶ 5.)  Two Harbors then will be able to use the Blackface Photo only in this litigation and will have to file the photo under seal if Pine River so chooses.  (See id. ¶¶ 17-20, 31.)  By defying its discovery obligations, withholding the Blackface Photo, and engaging in motion practice, Pine River has made more information about the details of Mr. Taylor dressing in blackface public than if Pine River had produced the photo.  In the Motion and Cross-Motion, Pine River **publicly** admitted that Mr. Taylor dressed in blackface.  Pine River (as well as Mr. Taylor's "privacy interests") faces **no** cognizable harm from the (presumably confidential) production of the Blackface Photo, which depicts the conduct that is the subject of Pine River's public statements.

Even if there were some (unidentified) potential harm to Mr. Taylor notwithstanding the Protective Order (and there is not), it would be far outweighed by the clear relevance and probative value of the Blackface Photo.  There is no other evidence that actually shows Mr. Taylor's conduct.  Nor is there any basis for Pine River's extraordinary proposal that Two Harbors be prevented from filing, and the Court be

---

[2] Pine River cites three cases to avoid this obvious conclusion:  Holloway v. Dollar Tree Distribution, Inc., 2015 WL 3606326, at *2 (D. Conn. June 8, 2015); Byrd v. Reno, 1998 WL 429676, at *4 (D.D.C. Feb. 12, 1998), and Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 240-41 & n.9. (W.D.N.Y. 1998).  All concerned forfeiture through inattention, not an affirmative act of waiver.  Pine River not only failed to make a relevance objection, but also affirmatively agreed to search for and produce responsive documents.  See, e.g., United States v. Olano, 507 U.S. 725, 733 (1993) (distinguishing waiver from forfeiture).  Pine River should not be allowed to renege on its agreement simply because it does not like what it found.

The Honorable Barbara Moses
Page 3

prevented from considering, the Blackface Photo until after summary judgment. (Opp. 4 n.4.)[3]

**Fourth**, after denying in its pleadings that Mr. Taylor dressed in blackface, Pine River now concedes the fact but argues that evidence of Mr. Taylor's conduct will neither survive summary judgment nor be admissible at trial. (See Opp. 2-3.) Pine River's premature merits arguments are not a basis to deny discovery of facts that would be the subject of such arguments. Courts within this Circuit do not decide the merits at the discovery stage. (See Mot. 4.) In this Court's words: "To the extent plaintiff is requesting an advance ruling as to the admissibility of certain items of evidence, the motion is DENIED as premature." Cruz v. Hastings, 2021 WL 4691375, at *1 (S.D.N.Y. Oct. 6, 2021) (Moses, J.) And Pine River's arguments reduce to a claim that Two Harbors cannot show damages. (See Opp. 2-3.) As this Court has explained: "In context of discovery, relevance is not coterminous with admissibility, and the Court need not rule, at this time, whether [a party's] damages theory will ultimately carry the day." Am. Fed'n of Musicians, 2016 WL 2609307, at *4 (citation omitted).[4]

To the extent that this Court is inclined to consider Pine River's premature merits arguments, they are fatally defective. Indeed, it is ironic that Pine River now argues that "the Court need not address any of **Two Harbors'** 'merits' issues." (Opp 3 n.3 (emphasis added).) Pine River apparently would have this Court accept Pine River's one-sided arguments without even considering Two Harbors' responses. That is not surprising. Pine River's merits arguments turn on a mischaracterization of both Two Harbors' Rule 30(b)(6) testimony and its import. Pine River treats that testimony as a set of binding judicial admissions. (See Opp. 2-3 (citing ECF No. 231-7 (Pls.' Ex. 7)).) That is contrary to Second Circuit precedent (and the testimony itself). See Keepers, Inc. v. City of Milford, 807 F.3d 24, 35 (2d Cir. 2015). (See also Cross-Mot. Opp. 4.) Merits arguments must await the presentation of a full record.

That is all the more true because Pine River falsely portrays Two Harbors' Rule 30(b)(6) testimony as conceding that, in 2015, Mr. Taylor fully informed Two Harbors' Board of Directors about his conduct. (See Opp. 1, 3 & n.3.) The facts will show that Mr. Taylor wore blackface to a Halloween party in 2015; his partners ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Those facts were not fully disclosed to Two Harbors' Board. Indeed, Pine River never asked the directors whom it deposed what Mr. Taylor disclosed to them. Stephen Kasnet, who in 2015 was Two Harbors' lead independent director and is now Chairman, is prepared to testify under oath that (1) in 2015, he was told that Mr. Taylor had worn blackface at a Halloween party; (2) he was **not** told in 2015 that Mr. Taylor had dressed in blackface twice, much less that the second occasion came **after** Mr. Taylor was admonished by his partners; (3) he was **not** told in 2015 that photos were taken of either occasion, much less that photos had been posted to social media; and (4) he first learned of facts (2) and (3) when he read the

---

[3] Pine River's only support for its proposal is Smith v. Café Asia, 246 F.R.D. 19 (D.D.C. 2007). Café Asia is wholly inapposite. There, the plaintiff alleged sexual harassment in the workplace and, in response, the defendants sought to compel him to produce sexually graphic pictures of his genitals and romantic partners. Id. at 20. The court relied on the policy concerns animating Federal Rule of Evidence 412, which restricts the use of sexual-history evidence against alleged victims of sexual misconduct. Id. at 20-22. Here, Mr. Taylor is not a victim, and there is no policy protecting individuals who dress in blackface.

[4] In urging this Court to rule on admissibility now, Pine River ignores this Court's decisions and instead relies on one out-of-circuit case, Café Asia. Café Asia is wholly inapposite. (See supra n.3.) Moreover, Pine River does not cite a single case within this Circuit that follows Café Asia. Indeed, this Court has consistently declined to limit discovery by reference to the rules concerning admissibility. See, e.g., Morgan Art Found. Ltd. v. McKenzie, 2020 WL 3578251, at *5 (S.D.N.Y. July 1, 2020) (Moses, J.) (concluding Rule 408 did not affect discoverability of settlement agreements); Cruz, 2021 WL 4691375, at *1; Am. Fed'n of Musicians, 2016 WL 2609307, at *4.

The Honorable Barbara Moses
Page 4

Minnesota Complaint in late 2018.  Two Harbors' Rule 30(b)(6) testimony is not to the contrary:  Pine River never asked Two Harbors what Mr. Taylor told the Board.  (See Pls. Ex. 7.)  Mr. Taylor's inadequate and misleading disclosures in 2015 breached Pine River's duty of loyalty and (among other things) support termination of the Management Agreement for cause and a claim under the faithless servant doctrine, which permits recovery of compensation without showing damages – not to mention the many other reasons why Pine River's legal and factual arguments fail, including but not limited to those outlined in the Motion (see Mot. 4) and Cross-Motion Opposition (see Cross-Mot. Opp. 4).  All of this simply goes to show why this Court does not decide merits issues based on cursory briefing in a discovery dispute.

        **Finally**, Pine River's obligations go beyond producing the Blackface Photo.  Pine River does not dispute that it agreed to produce documents responsive to the Requests.  (See Def. Ex. B at 168-70.)  Pine River did not satisfy its discovery obligations, and a simple search that took less than one day immediately identified the Blackface Photo.  Other photos of Mr. Taylor dressed in blackface, and how they were communicated, also would be highly probative.  Pine River claims that the Blackface Photo was not posted to social media.  Perhaps it will find the photos that were.  Moreover, Pine River has sought to excuse Mr. Taylor by asserting that he was not the one to spread photos of himself in blackface.  At his deposition, Mr. Taylor blamed a friend of his ex-girlfriend, stating that person posted the photos to social media without his consent.  (Def. Ex. I, Taylor Tr. 234-35.)  Pine River now has admitted that Mr. Taylor sent a photo of himself in blackface to a family member, thereby spreading a photo of himself in blackface despite the obvious potential to harm the reputation of Two Harbors (and Pine River).  Pine River has represented that Mr. Taylor forgot about the Blackface Photo.  Perhaps Mr. Taylor also forgot about other photos of himself dressed in blackface that he spread.  Two Harbors does not know.

        Pine River tries to defend its searches as reasonable.  (Opp. 4.)  When evaluated against the facts that Pine River – and only Pine River – had in its possession, they are not.  Mr. Taylor is Pine River's CEO, and his knowledge is attributable to Pine River.  Mr. Taylor presumably knows that there were more photos of him dressed in blackface than those posted on social media (i.e., the only photos about which Two Harbors knew).  Mr. Taylor presumably knows that, at one time, he had a photo of himself in blackface on his phone.  And Mr. Taylor presumably knows that he sent (at least) one of those photos to a family member.  Despite that knowledge, Pine River designed searches that were incapable of finding the Blackface Photo.  Pine River excluded Mr. Taylor's family members.  (Opp. 4.)  And it performed keyword searches that, by its own admission, would not identify photos.  (Id.)  When Two Harbors raised the lack of responsive documents at the beginning of November, Pine River represented that it had conducted "targeted searches" for documents responsive to the Requests.  (Def. Ex. D at 1.)  Pine River agreed to conduct an image search only reluctantly – after four requests – in response to further pressure.  (Mot. 2.)  Pine River now claims that it did so "[t]o avoid burdening the Court with a potential dispute."  (Opp. 4.)  Conducting a search and then withholding the results is not the conduct of a party trying to avoid a dispute.  It is the conduct of a party that believed that its latest search would be just as incapable of identifying responsive documents as its previous searches but turned out to be wrong.  Neither this Court nor Two Harbors can rely on Pine River's current production of documents responsive to the Requests.  Pine River must do much better.[5]

        This Court should grant Two Harbors' Motion.

---

[5] Pine River's production failure is not an isolated occurrence but rather a recurring theme.  (See ECF No. 237.)

The Honorable Barbara Moses
Page 5

                                              Respectfully submitted,

                                               */s/ Daniel Roeser*
                                              Daniel Roeser
                                              **GOODWIN PROCTER LLP**
                                              The New York Times Building
                                              620 Eighth Avenue
                                              New York, NY 10018
                                              212-813-8800
                                              droeser@goodwinlaw.com

cc: Counsel of record via ECF