

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRCM ADVISERS LLC, et al.,

      Plaintiffs,

-against-

TWO HARBORS INVESTMENT CORP.,

      Defendant.

20-CV-5649 (LAK) (BCM)

**MEMORANDUM AND ORDER REGARDING POST-TERMINATION DOCUMENTS**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court is defendant's letter-motion dated December 12, 2022 (Def. Ltr.) (Dkt. 237), requesting an order compelling plaintiffs to produce "responsive documents dated after August 14, 2020." For the reasons that follow, the motion will be granted.

## Background

Plaintiffs PRCM Advisors LLC, Pine River Capital Management L.P., and Pine River Domestic Management L.P. (collectively Pine River) served as the external manager of defendant Two Harbors Investment Corp. (Two Harbors), a real estate investment trust (REIT), from October 28, 2009, until August 14, 2020, when Two Harbors terminated the parties' Management Agreement and commenced managing itself. *See* Second Amended Complaint (SAC) (Dkt. 86) ¶ 27; Answer, Affirmative Defenses, and Counterclaims (Ans. & Counterclaims) (Dkt. 93) at 70-71, ¶ 3. During that almost 11-year period, Pine River served as Two Harbors's investment advisor, ran its day-to-day operations, and supplied its management team and other personnel. SAC ¶ 28; Ans. & Counterclaims at 71, ¶ 4. In 2014, the Two Harbors directors approved an amendment to the Management Agreement stating that all intellectual property "created or developed by [Pine River] in connection with [its] performance of this Agreement or otherwise and the Intellectual Property Rights associated therewith shall be the sole and exclusive property of [Pine River]." SAC ¶ 101(b); Ans. & Counterclaims at 105-06, ¶ 116.

In this action, Pine River alleges that Two Harbors's termination of the Management Agreement breached that contract because Two Harbors lacked "cause" to terminate it (and in the absence of cause would have been required to pay Pine River a substantial termination fee). *See* SAC ¶ 2. Pine River further alleges that Two Harbors poached its employees and continued to use Pine River's intellectual property after the termination without authorization. *Id*. ¶ 3. Plaintiff asserts ten claims against Two Harbors, on a variety of statutory, contract, and tort theories, seeking damages, declarations, and injunctive relief. *Id*. ¶¶ 115-217.

Two Harbors, for its part, alleges that Pine River – motivated by its desire to keep the lucrative Management Agreement in place – breached its contractual and fiduciary duties to Two Harbors by, among other things, incentivizing Two Harbors's senior executives (which it supplied) to prevent or delay Two Harbors from changing managers or becoming self-managed, without regard for the best interests of Two Harbors. *See* Ans. & Counterclaims at 71-74, ¶¶ 5-12. Two Harbors further charges that its former manager concealed that information – as well as the true import of the 2014 amendment – from Two Harbors's independent directors, and that Pine River's partners "engaged in conduct that created reputational issues and risks for Two Harbors." *Id*. at 72-74, ¶¶ 7-14. Two Harbors asserts twelve counterclaims against its former manager on a variety of statutory, contract, and tort theories, seeking declaratory relief, damages, and disgorgement of the sums it paid under the Management Agreement, as well as all intellectual property that Pine River "purports to own" as a result of the 2014 amendment. Ans. & Counterclaims at 115-35, ¶¶ 156-244.

## The Discovery Dispute

During the fact discovery period, which closed on November 28, 2022 – except "as may otherwise be ordered by the Court" (Dkt. 246 ¶ 1(a)) – the parties engaged in extensive negotiations

concerning the scope and extent of their respective document production obligations. Two Harbors's initial Requests for the Production of Documents (RFPs), served in February 2022, did not seek any documents post-dating the termination of the Management Agreement on August 14, 2020. *See* Pl. Ltr. dated Dec. 13, 2022 (Pl. Opp. Ltr.) (Dkt. 243), Ex. 1 at 9, ¶ 15. Pine River's RFPs, on the other hand, were generally unlimited as to date, *see* Def. Ltr. Ex. B, causing Two Harbors to object to those RFPs "to the extent they seek documents or information concerning any matter . . . or after August 14, 2020." *Id*. Ex. C at 2, ¶ 3.

Thereafter, both parties' positions evolved considerably, particularly after Two Harbors agreed, during an April 6, 2022 meet-and-confer, to "resolve discovery issues to the extent possible through mutual agreement on search terms." Def. Ltr. Ex. F at 1 (April 11, 2022 letter from Two Harbors to Pine River).[1] For example, on April 7, 2022, Two Harbors informed Pine River that, despite its earlier objections, it would "be able to agree to an extended date range" for "many and perhaps all" of Pine River's RFPs, but in return requested that Pine River "apply an extended date range to Two Harbors' requests for documents relevant to those issues[.]" Pl. Opp. Ltr. Ex. 3 (April 7, 2022 letter from Two Harbors to Pine River) at 5.[2] Two days later, on April 9, 2022, Pine River

---

[1] This approach was consistent with the parties' Stipulation Regarding the Production and Discovery of Electronically Stored Information (ESI Protocol) (Dkt. 104), which required them to meet and confer in an effort to agree upon "search terms to be run against potentially responsive ESI," ESI Protocol ¶ 7, as well as "the appropriate temporal scope of discovery." *Id*. ¶ 8.

[2] Two Harbors's April 7, 2022 letter – like virtually all of the discovery-related correspondence presented to the Court in connection with the instance motion – is lengthy, quarrelsome, and replete with self-congratulatory descriptions of the sender's heroic discovery efforts and consistent good faith, intermixed with accusations of delay, obstructionism, dishonesty, and other discovery-related misconduct on the part of the opposing party. To the extent the parties wrote these letters – at least in part – with a potential future judicial audience in mind, the Court advises them that vigorous efforts of this kind to paint the record in rosy hues are unlikely to influence a busy judge who has waded through hundreds of similar letters, in the course of resolving hundreds of discovery disputes, and whose objective, in reviewing the parties' correspondence, is to determine what the parties actually did, not how they later characterized their own conduct or that of their opponent.

confirmed that it was "willing to negotiate regarding the date ranges that should be applied in searching for documents responsive to each of Two Harbors's requests," and asked for "a proposal." Def. Ltr. Ex. E (April 9, 2022 letter from Pine River to Two Harbors) at 2. On April 11, 2022, Two Harbors agreed to "make a proposal," Def. Ltr. Ex. F at 2, and on May 13, 2022 (after an earlier proposal was rejected), Two Harbors sent Pine River a revised proposal in the form of a detailed, 20-page compendium attached to its cover letter as "Appendix A." *See* Def. Ltr. Ex. H (excerpts of May 13, 2022 letter from Two Harbors to Pine River, including appendices); Def. Ltr. dated Dec. 21, 2022 (Def. 12/21/22 Ltr.) (Dkt. 248) Ex. H (complete copy of same letter). Additionally, Two Harbors proposed that both sides use TAR (technology assisted review) to review the documents "hit on" by the agreed-upon search terms. Def. 12/21/22 Ltr. Ex. H at 6. In Appendix A, Two Harbors listed each of its RFPs (in groups) and, for each group of RFPs, set forth its proposed search terms, the proposed custodians whose ESI would be searched using those terms, and the proposed date range for the search. For some categories, there was "[n]o date limitation." Def. Ltr. Ex. H, App. A. For others, date ranges were provided. *Id.* Those date ranges had varying starting points, but all of them extended to the "present." *Id*.

On May 20, 2022, Pine River objected to the May 13 proposal as overbroad, noting among other things that Two Harbors had previously sought "discovery cutoffs" ending August 20, 2020, and wrote, in a footnote, "We trust that the references to 'no date restrictions' and 'to the present' are merely imprecise wording, and we will apply the original date cutoffs unless otherwise agreed with respect to a specific request." Def. Ltr. Ex. O (May 20, 2022 letter from Pine River to Two Harbor) at 2 n.1. On May 25, 2022, Two Harbors pushed back, demanding that Pine River either agree to its May 13 proposal "in its entirety" or identify the "specific terms" to which it objected.

4

*See* Def. Ltr. Ex. G (excerpts of May 25, 2022 letter from Two Harbors to Pine River) at 6; Def. 12/21/22 Ltr. Ex. G (complete copy of same letter) at 6.

Two days later, on May 27, 2022, Pine River sent Two Harbors a letter in which it complained generally about the search terms in Two Harbors's May 13 proposal, which, although "somewhat improved," still "hit on over 2.36 million unique messages" when run "within the Global Relay archive." Def. Ltr. Ex. J (excerpts of May 27, 2022 letter from Pine River to Two Harbors) at 2-3; Def. 12/21/22 Ltr. Ex. J (complete copy of same letter) at 2-3.[3] Nonetheless, Pine River wrote, it

> . . . wants to move forward with this process in good faith and therefore is willing to agree in principle to Two Harbors' revised search terms proposal on Appendix A to its May 13 letter subject to the conditions set forth herein.

Def. 12/21/22 Ltr. Ex. J at 3. Additionally, Pine River agreed that "the parties may still need to use TAR to identify responsive documents," and stated that it intended to use a specific TAR software product once it exported the 2.36 million messages out of Global Relay and into the Relativity e-discovery environment. *Id*. at 3-4. None of the conditions set forth in Pine River's May 27 letter implicated the date ranges set forth in Two Harbors's May 13 proposal.

On June 22, Pine River advised that it was "promptly moving forward with the use of TAR to review documents that hit on the search terms in Two Harbors's May 13 proposal, as modified above." Def. Ltr. Ex. K (excerpts of June 22, 2022 letter from Pine River to Two Harbors) at 4; *see also* Def. 12/21/22 Ltr. Ex. K (complete copy of same letter) at 4. The modifications outlined

---

[3] Global Relay Archive is a cloud-based archiving service used to capture, preserve, and manage "[u]nstructured data like email, IM, voice calls, and files." Global Relay, "Archive," https://www.globalrelay.com/discover/archive/? (last visited Dec. 30, 2022). Pine River and Two Harbors agreed, in their ESI Protocol, that to the extent a party maintained "an enterprise-level archive of electronic messages through Global Relay Archive or a similar service," that party could "collect those message types from that archive and need not collect or produce the corresponding electronic files at the individual custodian level." ESI Protocol ¶ 6.

"above" in the June 22 letter concerned the removal of a "proximity limiter" from two specific search term strings (because they were "returning syntax errors"), and did not implicate the date ranges set forth in Two Harbors's May 13 proposal. *Id.* On July 1, 2022, Pine River reported that it "had begun its use of TAR to review documents that hit on the search terms in Two Harbors' May 13 proposal, as modified in Section I of our June 22 letter." Def. Ltr. Ex. L (July 1, 2022 letter from Pine River to Two Harbors) at 2. On July 13, 2022, Pine River reminded Two Harbors that it had "*agreed* to Two Harbors' search terms, with only minor modifications[.]" *See* Def. Ltr. Ex. M (July 13, 2022 letter from Pine River to Two Harbors) at 1 (all emphases in the original).[4]

On November 30, 2022 – two days after the close of fact discovery – Two Harbors learned that a non-party, Stout Risius Ross, LLC (Stout), had collected documents responsive to a subpoena served upon it by Two Harbors, including communications between Stout and Pine River regarding Stout's 2021 valuation of Pine River. *See* Def. Ltr. Ex. N (Nov. 30, 2022 email from Two Harbors to Pine River).[5] Two Harbors asked Pine River why it had neither produced such documents itself nor logged them as privileged. *Id*. After some backing and forthing, Pine River acknowledged that its production did not (for the most part) include documents dated after August 14, 2020, because they "were not within the scope of Two Harbors' document requests and are not responsive." *Id*. Ex. A, at ECF pp. 2-3 (Dec. 9, 2022 email from Pine River to Two Harbors).[6]

---

[4] In the same letter, Pine River confirmed that with respect to "categories 13-20 on pages 6-7 of your June 27 letter, Pine River will produce documents responsive to Two Harbors' requests up to the present[.]" Def. Ltr. Ex. M at 2. Neither party has supplied a copy of Two Harbors's "June 27 letter."

[5] The Stout subpoena is described in more detail in the Court's Order dated December 9, 2022 (Dkt. 233), which gave Two Harbors leave to conduct a deposition of Stout notwithstanding the expiration of fact discovery period on November 28, 2022.

[6] Pine River did produce "some documents dated after August 14, 2020," as a result of its search in locations "*outside of its e-communication search team review*," but "expressly did not do so with respect to e-mail searches" within the Global Relay archive, except for "three IP related terms," which were "inadvertently run without date restrictions" due to a "miscommunication with

The instant motion followed. Two Harbors argues principally that Pine River should be compelled to do that which it agreed to do on May 27 and confirmed thereafter: search its documents, including ESI in its Global Relay archive, and produce otherwise-responsive documents, up to the present. Def. Ltr. at 1-4.

In its opposition letter-brief, Pine River argues: (1) that "post-termination" documents (that is, documents post-dating the termination of the Management Agreement on August 14, 2020) are "not responsive" to Two Harbors's original RFPs as served, and therefore that it was not required to search for them; (2) that Pine River told Two Harbors in its May 20 footnote that it would "apply the original date cutoffs unless otherwise agreed with respect to a specific request," after which Two Harbors "neither objected to Pine River's position, nor identified any 'specific requests' for extended searching"; (3) that even if Pine River had agreed to *search* its post-termination ESI, it had no obligation to *produce* post-termination documents, because they would "not be responsive to any requests"; (4) that since Two Harbors "opted to do nothing during the discovery period" with respect to the date cutoff applied by Pine River, it "cannot show 'good cause' to reopen discovery now"; and (5) that Pine River's post-termination documents "are not relevant to any of Two Harbor's claims or defenses," and in any event many are privileged, such that the burden of conducting a "second search and review of Pine River's email archive" would outweigh the "minimal" likelihood of finding responsive, non-privileged documents. Pl. Opp. Ltr. at 1-4.

In reply, Two Harbors disputes Pine River's version of the parties' recent history, pointing out (with liberal use of bolded and underlined text) that it "**explicitly rejected**" Pine River's May 20 footnote on May 25, when it asked Pine River to "agree to Two Harbors' May 13 search term

---

the vendor." Pl. Opp. Ltr. at 4 n.4. As a result of that miscommunication, ".1% of the documents produced from the Global Relay archive" were dated after August 14, 2020. *Id.*

7

counterproposal in its **entirety**," and "Pine River **did just that** when it responded two days later on May 27, 2022, and agreed to run the May 13 proposal without modification." Def. Reply Ltr. (Dkt. 245) at 1-2. Further, in Two Harbors's view, Pine River confirmed its agreement in its June 22 and July 1 letters, and thus was obligated to search for and produce otherwise-responsive documents "to the 'present'" across all sources, including its "primary data source," the Global Relay archive. *Id*. at 3-4. Two Harbors counters Pine River's relevance argument by pointing to the 2021 communications with Stout, which are admittedly relevant to the parties' claims and defenses but were never collected or produced by Pine River, and counters its burden argument by pointing out that it is only asking Pine River to do what Two Harbors has already done. *Id*. at 3 (noting that Two Harbors has already "has reviewed and produced **tens of thousands** more documents than Pine River to comply with the parties' agreement," including Pine River's insistence that Two Harbors search for and produce documents post-dating August 14, 2020).

### Discussion

It is "essential to our system of justice that lawyers and litigants, above all, abide by their agreements and live up to their own expectations." *Arista Recs. LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 433 (S.D.N.Y. 2009) (quoting *In re Bristol-Myers Squibb Sec. Litig.,* 205 F.R.D. 437, 444 (D.N.J. 2002)); *accord In re Initial Public Offering Sec. Litig*., 220 F.R.D. 30, 36 n.32 (S.D.N.Y. 2003). Thus, as Judge Ellis put it in *Pinks v. M&T Bank Corp.*, 2016 WL 1216813, at *4 (S.D.N.Y. Mar. 25, 2016), when "[p]arties enter into agreements on the best way to conduct discovery, courts should uphold and honor such agreements."

In this case, Pine River clearly made, and then thrice confirmed, an agreement to use Two Harbors's May 13 proposal to collect, review, and produce ESI in discovery, including ESI in the Global Relay archive. Pine River's alternative interpretation of the parties' correspondence – that

it agreed to use the May 13 proposal *except for* the extended date ranges that were an integral part of that proposal – is inconsistent with what it told Two Harbors on April 9 (when it said it was willing to "negotiate concerning the date ranges that should be applied" and asked for "a proposal"), on May 27 (when it complained about Two Harbors's May 13 proposal but nonetheless agreed to it "in principle"), on June 22 (when it reported that it was "promptly moving forward with the use of TAR to review documents that hit on the search terms in Two Harbors' May 13 proposal"), on July 1 (when it confirmed that it "had begun its use of TAR to review documents that hit on the search terms in Two Harbors' May 13 proposal"), and on July 13 (when it reiterated that it had agreed to Two Harbors's terms with only "minor modifications"). Significantly, although Pine River twice stated that it was applying "conditions" or "modifications" to Two Harbors's May 13 proposal, on both occasions (May 27 and June 22), it expressly described those modifications, none of which had anything to do with the date ranges, and all of which were in fact (as Pine River put it on July 13) "minor."

It is true that in one letter, on May 20, Pine River complained about the breadth of the May 13 proposal and stated, in a footnote, that it would "apply the original date cutoffs unless otherwise agreed with respect to a specific request." But that was *before* Two Harbors objected and demanded, on May 25, that Pine River agree to the May 13 proposal "in its entirety" or identify the specific terms that it claimed to be too burdensome, *before* Pine River elected, on May 27, to accept the entire proposal ("in principle"), subject only to conditions having nothing to do with the date ranges, and *before* Pine River confirmed that agreement three times, noting that the only modifications it had made to the May 13 proposal were "minor." On this record, Two Harbors had no reason to believe (until after the fact discovery period closed) that Pine River's acceptance of the May 13 proposal was subject to the additional, significant, but wholly undisclosed qualification

9

that Pine River did not intend to collect, review, or produce documents dated after August 14, 2020.

Once Pine River agreed to Two Harbors's May 13 proposal, including the extended date ranges, it was no longer entitled to rely on the more limited date ranges set forth in Two Harbors's initial RFPs to govern document collection, review, or production. In the cases that Pine River cites for the proposition that "[t]he document requests define the scope of what is to be produced – not the search terms," Pl. Opp. Ltr. at 4, the courts rejected unilateral requests, made by one party and opposed by the other, for searches going beyond the scope of the requesting party's RFPs. *Dennar v. Administrators of Tulane Educ. Fund*, 2021 WL 4439585, at *6 (E.D. La. Sept. 28, 2021); *Oppenheimer v. Scarafile*, 2021 WL 5902740, at *4 (D.S.C. Aug. 26, 2021). Here, by contrast, Two Harbors asks the Court to "uphold and honor," *Pinks*, 2016 WL 1216813, at *4, an agreement made by the parties – as part of a complex series of discovery accommodations and compromises – to expand the temporal scope of Two Harbors's RFPs.

Such agreements "are regularly enforced." *In re Gorsoan Ltd.*, 2020 WL 6891520, at *3 (S.D.N.Y. Nov. 23, 2020) (Sullivan, C.J.) (concluding that Gorsoan "cannot now complain about the deal it struck" and enforcing the parties' negotiated discovery protocol concerning search terms to be used and email accounts to be searched), *reconsideration denied,* 2021 WL 673456 (S.D.N.Y. Feb. 22, 2021). Courts enforce discovery deals not only because lawyers should "abide by their agreements," *Arista Recs.*, 608 F. Supp. 2d at 433, but also because "if the parties could not rely on courts to enforce discovery agreements, there would be little incentive for parties to make them." *In re Santa Fe Nat. Tobacco Co. Mktg. & Sales Pracs. & Prod. Liab. Litig.*, 2018 WL 3972909, at *11 n.9 (D.N.M. Aug. 18, 2018); *see also Milazzo v. KG Enterprises, Inc.*, 1999 WL 1327394, at *2 (D.N.H. Feb. 16, 1999) ("If parties did not resolve most discovery matters by

10

consent and stipulation the court would be inundated with discovery motions. The court, however, cannot expect counsel to make, and rely upon stipulations if it is unwilling to generally enforce discovery stipulations."); Fed. R. Civ. P. 29(b) (permitting the parties to modify, by stipulation, any "procedures governing or limiting discovery" other than extensions of time that would interfere with deadlines set by the court).

Because the parties agreed to the discovery now at issue, the present application is properly characterized as a motion to compel discovery that should have been provided earlier, pursuant to Fed. R. Civ. P. 37(a), not a motion to "reopen" discovery subject to the good cause standard set forth in Fed. R. Civ. P. 16(b)(4). For the same reason, Pine River's complaints about relevance and burden are largely beside the point. To the extent it would be appropriate for this Court to consider those complaints, they are rejected. The 2021 communications with Stout, which Pine River failed to produce because they post-dated August 14, 2020, demonstrate that at least some post-termination documents are relevant to the parties' claims and defenses. Common sense suggests that post-termination documents may shed additional light on Pine River's damage claims, and may also include discussions of relevant pre-termination events. And while there is some burden associated with searching, reviewing, and producing responsive documents post-dating August 14, 2020, Two Harbors has already performed comparable searches for Pine River's benefit. It is not unreasonable to require Pine River to reciprocate. Finally, while some of the otherwise-responsive post-termination documents may prove to be privileged, any additional burden flowing from that fact should be limited, because the parties are not required "to include on any privilege log Documents concerning this litigation exchanged between a Party and its attorneys dated or created on or after August 15, 2020." ESI Protocol ¶ 11.

**Conclusion**

Defendant's letter-motion (Dkt. 237) is GRANTED to the extent that plaintiffs shall promptly collect, review, and produce responsive documents dated after August 14, 2020, in accordance with Two Harbors's May 13, 2022 proposal, including documents in the Global Relay archive. It is premature, however, to grant defendant unfettered leave to "re-open as appropriate the depositions of some or all of the witnesses whom Two Harbors already has deposed." Def. Ltr. at 2 n.2. The parties are directed to meet and confer concerning the timing of plaintiff's additional production and the question of additional deposition sessions.

Dated: New York, New York
       December 30, 2022                    SO ORDERED.

                                            _____
                                            **BARBARA MOSES**
                                            **United States Magistrate Judge**