USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-10-2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PRCM ADVISERS LLC, et al.,

                            Plaintiffs,


            -against-                                    20-cv-5649 (LAK)


TWO HARBORS INVESTMENT CORP.,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## MEMORANDUM OPINION



Appearances:

                        Barry M. Landy
                        Jacob F. Siegel
                        Jan M. Conlin
                        Michael V. Ciresi
                        Heather M. McElroy
                        Kyle W. Wislocky
                        Mathew R Korte
                        CIRESI CONLIN LLP

                        Jonathan Warren Muenz
                        Ketan V. Patel
                        Sharon Lee
                        Steven E. Sexton
                        Thomas A. Broughan
                        Ching-Lee Fukuda
                        Nathaniel C. Love
                        SIDLEY AUSTIN LLP

                        *Attorneys for Plaintiffs*

Amadou K. Diaw
Christine V. Sama
Daniel P. Roeser
Gabriella Montes
James P. Breen
Justin David Ward
Kelly Grosshuesch
Louis Lobel
Marco Yu-Hin Wong
Richard Mark Strassberg
GOODWIN PROCTOR LLP
*Attorneys for Defendant*

LEWIS A. KAPLAN, *District Judge.*

PRCM Advisers LLC ("PRCM") was established in 2009 to manage Two Harbors Investment Corp. ("Two Harbors"), a real estate investment trust. In July 2020, PRCM sued Two Harbors for allegedly breaching the parties' management agreement. It claimed that Two Harbors perpetrated a "coup" by allegedly fabricating reasons to terminate PRCM as its external manager, poaching PRCM's employees, and misappropriating PRCM's intellectual property.

Two Harbors denies any such wrongdoing. It has counterclaimed against PRCM and its parent company, Pine River Capital Management, L.P. ("Pine River Capital") (collectively, "plaintiffs"), alleging that the management agreement is void and unenforceable and that plaintiffs breached their fiduciary duties. It brought also common law and tort claims under New York law. The matter now is before the Court on plaintiffs' motion for judgment on the pleadings dismissing those of Two Harbors's defenses and counterclaims that are based on the Investment Advisers Act of 1940 and all of its common law and tort counterclaims except for breach of contract.

*Facts*

The relevant facts and provisions of the management agreement between plaintiffs and Two Harbors are set forth in detail in the Court's prior decisions, with which the Court assumes familiarity.[1] From October 2009 to August 2020, Two Harbors was managed entirely by PRCM, which, in turn, relied on the employees of Pine River Capital. During that period, Two Harbors allegedly "relied on PRCM to serve as Two Harbors' investment adviser, run Two Harbors' day-to-day operations, and provide all of Two Harbors' personnel, including the entire Two Harbors management team."[2] Two Harbors alleges a number of wrongdoings by PRCM and Pine River Capital in their managerial capacities that Two Harbors claims constituted "disloyal and unlawful conduct."[3] Its allegations may be organized into two broad categories:

(1) Two Harbors alleges that two clauses of the management agreement (one with regard to the assignment of liabilities, the other with regard to the payment of a termination fee) violate the Investment Advisers Act ("IAA") of 1940, which Two Harbors argues permits it to rescind the management agreement, and

(2) Two Harbors alleges also that plaintiffs breached the fiduciary duties that they owed to it by allegedly causing conflicts of interest, allegedly impeding Two Harbors' efforts to internalize, and allegedly improperly concealing their practices

---

[1] *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649 (LAK), 2021 WL 2582132 (S.D.N.Y. June 23, 2021); *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649 (LAK), 2021 WL 4847224 (S.D.N.Y. Oct. 18, 2021).

[2] Dkt 89 (Def. Answer to Pls. Second Amend. Compl.) at 71 ¶ 4.

[3] *Id.* at 75 ¶ 17.

4

from the "Independent Directors," the Two Harbors board members who were unaffiliated with Pine River Capital.

*The Indemnification and Termination Fee Clauses in the Management Agreement*

The two clauses in the management agreement that Two Harbors alleges are unlawful and therefore permit it to rescind the agreement are (1) the indemnification clause (Section 11 of the management agreement), which concerns the assignment of liabilities,[4] and (2) the termination fee clause (Section 13(b) of the management agreement). The indemnification clause provides that:

"The Manager [(PRCM)] . . . will not be liable to the Company [(Two Harbors)] or any Subsidiary, to the Board of Directors, or the Company's or any Subsidiary's stockholders, members or partners for any acts or omissions by any such Person [(controlling or controlled by PRCM)] (including trade errors that may result from ordinary negligence, such as errors in the investment decision making process or in the trade process), pursuant to or in accordance with this Agreement, except by reason of acts constituting reckless disregard of the Manager's duties under this Agreement which has a material adverse effect on the Company and the Subsidiaries, willful misconduct or gross negligence, as determined by a final non-appealable order of a court of competent jurisdiction."[5]

---

[4]  For the avoidance of confusion, although the parties refer to this clause as the "Hedge Clause," the Court refers to it herein as the "indemnification clause."

[5]  Dkt 119-1, Decl. of Jan M. Conlin, Ex. 1 at 15-16 § 11(a).

The termination fee clause provides that:

> "In recognition of the level of the upfront effort required by the Manager
> [(PRCM)] to structure and acquire the assets of the Company [(Two Harbors)] and
> the Subsidiaries and the commitment of resources by the Manager, in the event that
> this Agreement is terminated in accordance with the provisions of Section 13(a) or
> Section 15(b) of this Agreement, the Company shall pay to the Manager, on the date
> on which such termination is effective, a termination fee (the 'Termination Fee')
> equal to three times the sum of the average annual Base Management Fee earned by
> the Manager during the 24-month period immediately preceding the date of such
> termination, calculated as of the end of the most recently completed fiscal quarter
> prior to the date of termination."[6]

Two Harbors argues that both the indemnification clause and the termination fee
clause "violate[] Sections 206 and 215 of the [IAA]" and that it "may rescind the [m]anagement
[a]greement" because the clauses are "inconsistent with the duties that PRCM owes Two Harbors
pursuant to the [IAA]."[7]

In addition to these two clauses, Two Harbors argues that the "Second Amendment"
to the management agreement "was obtained by PRCM in violation of its duties to Two Harbors,
including its fiduciary duties and its duties under the [IAA]."[8]  The Second Amendment stated that

---

[6]     *Id.* at 17 § 13(b).

[7]     Dkt 89 (Def. Answer to Pls. Second Amend. Compl.) at 82 ¶¶ 39, 40.

[8]     *Id.* at 128 ¶ 214.

6

"[a]ll Intellectual Property created or developed by [PRCM] in connection with [PRCM's] performance of this Agreement or otherwise and the Intellectual Property Rights associated therewith shall be the sole and exclusive property of [PRCM]."[9]  Two Harbors alleges that:

> "Contrary to PRCM's and Pine River[ Capital]'s representations to the Independent Directors, (1) it was not necessary for the Two Harbors Board to approve the Second Amendment in order for Pine River [Capital] to move forward with a commercial real estate initiative and (2) the Second Amendment was not a 'clarification' of ownership rights. Instead . . . the Second Amendment was PRCM's and Pine River[ Capital] 's underhanded attempt to co-opt ownership of certain 'intellectual property' developed and paid for by Two Harbors."[10]

For these reasons, Two Harbors seeks a declaration that it may rescind the management agreement and that the Second Amendment is void. In addition, Two Harbors argues that it is entitled to a "setoff" of potential liability. Specifically, it contends that because the management agreement "violates Section 206 of the [IAA], pursuant to Section 215 of the [IAA], [it] is entitled to reduce any liability to [plaintiffs] with respect to the [s]econd [a]mended [c]omplaint by at least as much as all [m]anagement [f]ees and [e]xpense [r]eimbursements paid by Two Harbors to PRCM pursuant to the [m]anagement [a]greement and all 'intellectual property,' and profits therefrom, that PRCM purports to own pursuant to the [m]anagement [a]greement."[11]  Two Harbors asserts also as an

---

[9]
  *Id.* at 105-06 ¶ 116.

[10]
  *Id.* at 106 ¶ 117.

[11]
  *Id.* at 126 ¶ 206.

affirmative defense that plaintiffs' claims are barred "because the [m]anagement [a]greement is not a valid and enforceable contract, is void, and/or is voidable."[12]

*Plaintiffs' Alleged Breaches of Their Fiduciary Duties*

Two Harbors claims also that plaintiffs engaged in several allegedly unlawful practices that breached the fiduciary duties they owed to it. It asserts that plaintiffs breached their fiduciary duties principally by allegedly causing conflicts of interest, delaying Two Harbors' efforts to internalize, and misleading and/or improperly concealing conduct that was not in Two Harbors' best interest from the Independent Directors. It raises at least eleven allegations of such misconduct.

With respect to its claim that plaintiffs created or caused conflicts of interest, Two Harbors alleges that:

(1) "[M]any of the executives that [plaintiffs] provided to Two Harbors were Pine River [Capital] partners subject to restrictive covenants that precluded them from continuing to provide services to Two Harbors in the event that PRCM ceased to be Two Harbors' manager. As a result of the restrictive covenants, those Two Harbors executives were conflicted in their management of Two Harbors because they knew that, if PRCM ceased to be Two Harbors' manager, they would be unable to continue providing services to Two Harbors. Until December 2019, however, [plaintiffs] concealed the restrictive covenants from the Independent Directors. [Plaintiffs] not only improperly leveraged PRCM's position as Two Harbors'

---

[12]     *Id.* at 63.

manager and the Pine River [Capital] partners' positions as Two Harbors executives to ensure that Two Harbors would face potentially insurmountable hurdles if it sought to change managers or internalize (i.e., become self-managed), but also concealed their improper and disloyal practice from the Independent Directors."

(2) "[W]hen Two Harbors agreed to contribute assets to Granite Point Mortgage Trust Inc. ('Granite Point'), a new Pine River-managed [real estate investment trust], in exchange for equity in Granite Point, [plaintiffs] failed to disclose to the Independent Directors that Granite Point's executives were subject to restrictive covenants that precluded their continuing to provide services to Granite Point in the event that Pine River [Capital] ceased to be Granite Point's manager. Consequently, the Independent Directors were not informed of a significant operational risk to Granite Point, even as Two Harbors exchanged its assets for Granite Point equity."

(3) "[Plaintiffs] structured the compensation of the Pine River [Capital] partner who was then serving as Two Harbors' Chief Executive Officer (the 'Former CEO') such that it was reduced by the compensation costs of Two Harbors' investment personnel. The Former CEO, in turn, had a handshake deal with the Pine River [Capital] partner who was then serving as Two Harbors' Chief Investment Officer (the 'Former CIO') such that the Former CIO's compensation also was reduced by the compensation costs of Two Harbors' investment personnel. Therefore, the Former CEO and the Former CIO necessarily were conflicted in determining how Two Harbors' investment team should be staffed. Moreover, PRCM and Pine River

did not reveal this conflict to the Independent Directors until 2019."[13]
With respect to its claim that plaintiffs allegedly impeded Two Harbors' efforts to internalize, Two Harbors alleges that:

> (4) "[Plaintiffs] sought to impose restrictive covenants on Two Harbors' incoming Co-Chief Investment Officers in 2019 in order to preclude them from continuing to provide services to Two Harbors in the event that PRCM ceased to be Two Harbors' manager. Again, [plaintiffs] sought to leverage improperly PRCM's position as Two Harbors' manager to ensure that Two Harbors would face potentially insurmountable hurdles if it sought to change managers or internalize."

> (5) "[A]pparently concerned that certain Two Harbors executives were advising that Two Harbors end PRCM's management, Pine River [Capital] sought to enter into a retirement agreement in 2019 with the Former CEO that would have provided him with lucrative compensation were PRCM to continue its management of Two Harbors through 2021. Upon information and belief, the proposed retirement package, the terms of which [plaintiffs] did not disclose to the Independent Directors, was intended to incentivize the Former CEO to delay or prevent Two Harbors from changing managers or internalizing until 2022."

> (6) "Pine River [Capital] sought to silence efforts by dedicated Two Harbors personnel to ensure that the Independent Directors were advised of the need for, and benefits of, internalization. On information and belief, Pine River [Capital] did so

---

[13] *Id.* at 72-73 ¶¶ 8, 9, 11.

because it was in the best interests of Pine River [Capital] and its partners—without regard for the best interests of Two Harbors."

(7) "[O]nce Two Harbors notified PRCM that Two Harbors was not renewing the management agreement based on a determination that PRCM's compensation was unfair, PRCM and Pine Rive[r Capital] engaged in bad faith conduct that was, on information and belief, intended to disrupt Two Harbors' business, Two Harbors' ongoing investigation of [plaintiffs'] misconduct, and Two Harbors' response to a lawsuit filed by PRCM against Two Harbors in June 2020. [Plaintiffs] told dedicated Two Harbors personnel that (among other things) they were obligated 'to act in Pine River[ Capital]'s best interests' – not Two Harbors' best interests – and directed those personnel not to 'communicate with any attorneys for Two Harbors.'"

(8) "[O]nce Two Harbors notified PRCM that it was terminating PRCM as its manager for cause as a result of PRCM's disloyal and unlawful conduct, [plaintiffs] demanded that Two Harbors provide them with access to non-public personally identifiable information ('PII') of borrowers of residential mortgage loans for which Two Harbors owned MSR [(mortgage service rights)]. On information and belief, [plaintiffs] sought the PII to impede Two Harbors' orderly transition to self-management, but the demand was a serious matter. As [plaintiffs] were well aware – because Two Harbors informed them in writing – acquiescing to [plaintiffs'] demand would have required Two Harbors to violate federal and state law."[14]

_____

[14]

*Id.* at 73-75 ¶¶ 10, 12, 15, 16, 17.

11

With respect to Two Harbors' claim that plaintiffs misled and/or improperly concealed information from the Independent Directors, in addition to the allegations noted above of plaintiffs' alleged failure to disclose certain information to the Independent Directors, Two Harbors alleges that:

> (9) "[Plaintiffs] co-opted the incentive equity awards that Two Harbors made to certain Pine River [Capital] partners who served as Two Harbors executives. From 2013 through 2019, [plaintiffs] used those equity awards to offset their compensation obligations to those individuals, saving about $10.3 million while concealing their improper and disloyal practice from the Independent Directors."

> (10) "[Plaintiffs] misled the Independent Directors with respect to an amendment to the [m]anagement [a]greement between PRCM and Two Harbors that sought to transfer to PRCM the ownership of certain valuable 'intellectual property' for which Two Harbors had paid and would continue to pay."[15]

Finally, Two Harbors contends that Pine River Capital partners, "including those serving on the Two Harbors [b]oard, engaged in conduct that created reputational issues and risks for Two Harbors."[16]  Specifically, it alleges that:

> (11) "[T]he Pine River [Capital] partner then serving as the Chairman of the Two Harbors [b]oard (the 'Former Chairman') was alleged to have dressed in blackface (with pictures posted to social media), acknowledged use of a controlled

---

[15]

  *Id.* at 72 ¶ 7, 75 ¶ 13.

[16]

  *Id.* at 74 ¶ 14.

substance, and mismanaged Pine River – all of which was referenced in a lawsuit by Pine River's former president against Pine River and the Former Chairman."[17]

### *Discussion*

*Legal Standard*

The standard of review governing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that governing a motion to dismiss under Rule 12(b)(6).[18] "In either instance, the court must accept as true the non-movant's allegations, along with the allegations in the movant's pleading that the non-movant has admitted, and must draw all reasonable inferences in the non-movant's favor."[19]  As the Second Circuit has explained:

"In *Ashcroft v. Iqbal*, the Supreme Court set forth a 'two-pronged approach' to evaluate the sufficiency of a complaint [or counterclaim]. 129 S.Ct. at 1949–50. 'First, although a court must accept as true all of the allegations contained in a complaint [or counterclaim], that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quotation marks and alterations omitted). 'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint

---

[17]  *Id.*

[18]  *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023).

[19]  *Apex Mar. Co. v. OHM Enterprises, Inc.*, No. 10-cv-8119 (SAS), 2011 WL 1226377, at *1 (S.D.N.Y. Mar. 31, 2011).

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' *Id.* (quotation marks and alteration omitted). 'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.' *Iqbal*, 129 S.Ct. at 1949 (quotation marks omitted). Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable. *See id.* at 1947–52."[20]

The sufficiency of affirmative defenses can be "determined [also] on a pretrial motion for judgment on the pleadings or summary judgment."[21]

Plaintiffs argue that they are entitled to judgment on the pleadings dismissing Counts VI (recision of the management agreement), VII (setoff of potential liability), and VIII (declaratory judgment) of the counterclaim and Two Harbors' second affirmative defense (voidness) on the ground that those claims are unsupported by the IAA. The contend also that they are entitled to judgment on the pleadings dismissing Counts I-IV and IX, X, and XII (common law and tort claims) because those claims, they argue, fail as a matter of law. The Court addresses these arguments in *seriatim*.

---

20      *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (ellipsis in original).

21      *Blonder-Tongue Lab's, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 348 (1971).

14

*The Investment Advisors Act*

Two Harbors claims that it is entitled to rescind the management agreement because (1) plaintiffs "failed to comply with the requirements of the [IAA], including by breaching its fiduciary duties owed to Two Harbors pursuant to the [IAA] in connection with the acts and omissions set forth above,"[22] (*i.e.*, plaintiffs' "subsequent misconduct") and (2) the indemnification clause and the termination fee clause in the management agreement violate Sections 206 and 215 of the IAA.[23]

The IAA "'reflects . . . a congressional intent to eliminate, or at least to expose, all conflicts of interest which might incline an investment adviser – consciously or unconsciously – to render advice which was not disinterested.'"[24]  Section 215 of the IAA offers "a limited private remedy . . . to void an investment advisers contract."[25]  Specifically, it provides that:

> "Every contract made in violation of any provision of [the IAA] and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of [the IAA], or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule,

---

[22]  Dkt 89  (Def. Answer to Pls. Second Amend. Compl.) at 123 ¶ 194.

[23]  15 U.S.C. §§ 80b-6, 80b-15.

[24]  *S.E.C. v. DiBella*, 587 F.3d 553, 567 (2d Cir. 2009) (ellipsis in original) (quoting *SEC v. Wall St. Transcript Corp.*, 422 F.2d 1371, 1376 (2d Cir.1970)).

[25]  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979).

regulation, or order, shall have made or engaged in the performance of any such contract . . . ."[26]

Section 206 prohibits an investment advisor from, among other things, "employ[ing] any device, scheme, or artifice to defraud any client or prospective client" and "engag[ing] in any act, practice, or course of business which is fraudulent, deceptive, or manipulative."[27]  The Supreme Court has explained that:

> "Unlike § 215, § 206 simply proscribes certain conduct, *and does not in terms create or alter any civil liabilities*. If monetary liability to a private plaintiff is to be found, it must be read into the Act. Yet it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.' . . . Congress expressly provided both judicial and administrative means for enforcing compliance with § 206. First, under § 217, 15 U.S.C. § 80b–17, willful violations of the Act are criminal offenses, punishable by fine or imprisonment, or both. Second, § 209 authorizes the [Securities and Exchange] Commission to bring civil actions in federal courts to enjoin compliance with the Act, including, of course, § 206. Third, the Commission is authorized by § 203 to impose various administrative sanctions on persons who violate the Act, including § 206. *In view of these express provisions for*

---

[26]   15 U.S.C. § 80b-15(b).

[27]   15 U.S.C. § 80b-6(1), (4).

16

*enforcing the duties imposed by § 206, it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.* '[28]

Plaintiffs' principal argument is that Two Harbors' claim that it is entitled to rescind the management agreement, its voidness defense, and its related claims for declaratory judgment and setoff of potential liability fail because the IAA "only permits rescission of contracts that are made illegally or require illegal performance; it does not void contracts based on alleged subsequent misconduct."[29] They argue also that "Two Harbors' counterclaim has no independent basis under Section 206" because "it cannot be enforced by private plaintiffs."[30] They contend that:

> "The eleven allegations of conduct about which Two Harbors complains are not allegations of an illegal contract, or contractually required illegal performance, and therefore cannot form a basis for rescission of the [m]anagement [a]greement. Further, Two Harbors' allegations that the [m]anagement [a]greement is itself illegal are solely based on the [indemnification and termination fee clauses], but the case law and SEC guidance confirm that the inclusion of the [indemnification and termination fee clauses] in the [m]anagement [a]greement does not violate the IAA."[31]

---

[28]
 *TAMA*, 444 U.S. at 19-20 (emphasis added) (citations omitted).

[29]
 Dkt 118 (Pls. Mem.) at 9.

 Plaintiffs do not dispute that they are "investment advisers" within the meaning of the IAA.

[30]
 Dkt 118 (Pls. Mem.) at 10.

[31]
 *Id.* at 9.

In the alternative, they argue that Two Harbors' claims that the indemnification and termination fee clauses violate the IAA, as well as their claims for declaratory judgment and setoff of potential liability, are time barred.

*Two Harbors' Allegations of Plaintiffs' "Disloyal and Fraudulent" Misconduct*

Plaintiffs and Two Harbors disagree as to whether the IAA provides a private right of action to rescind a contract based on allegations that the plaintiffs engaged in unlawful conduct allegedly in violation of IAA Section 206 *and* of the terms of the management agreement. Two Harbors argues that plaintiffs' "misconduct – including [p]laintiffs' disloyal and fraudulent conduct – is actionable under [§] 215(b) of the IAA, as demonstrated by (1) the text of [§ 215(b), (2) the purpose of the IAA, and (3) the weight of judicial authority."[32]  Its argument falls short on each ground.

First, the text of Section 215(b) unambiguously confirms that it voids "[e]very contract *made in violation*" of the IAA and "every contract heretofore or hereafter made, *the performance of which involves the violation of*, or the continuance of any relationship or practice in violation of*" the IAA.[33]  The two types of contracts it proscribes are clear: (1) contracts that were illegally formed, and (2) those that call for illegal performance. To the extent that there is any ambiguity, "the title [of § 215(b)] – '*Validity of contracts*' – indicates that § 215 targets *problems in the formation of contracts and in the contents of contracts, and not the actions taken pursuant to*

---

[32]       Dkt 125 (Def. Opp. Mem.) at 24.

[33]       15 U.S.C. § 80b-15(b) (emphasis added).

18

*contracts.*"[34]   Accordingly, as explained by one of my colleagues in an analysis with which I agree:

> "[B]oth § 215's title and § 215(b)'s text demonstrate that § 215(b) was meant to codify the more modest principle that illegal contracts are invalid. . . .  Because § 215(b) codifies a pre-existing common-law principle, it should be read consistently with that principle. *See Empire HealthChoice Assur., Inc. v. McVeigh*, 396 F.3d 136, 152 (2d Cir.2005) ('Congress is understood to legislate against the preexisting backdrop of the common law.'), *aff'd*, 547 U.S. 677 . . . (2006). Thus, under § 215(b), as under the common law, 'if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner.' 12 Am. Jur. § 153 (1938); *accord Cochran v. Burdick*, 70 F.2d 754, 756 (D.C.Cir.1934). Or, in the words of then-state-court-Justice Holmes, 'If the contract was legal, it would not be made illegal by misconduct on the part of [a party] in carrying it out.' *Barry v. Capen*, 151 Mass. 99, 23 N.E. 735, 735 (Mass.1890). *Consequently, a contract does not become void under § 215(b) merely because an investment adviser defrauded her or his client – rather, a contract is void only if it was made illegally or requires illegal performance.*"[35]

Two Harbors argues that the text of Section 215(b) supports its interpretation based upon the portion that states that it voids contracts "'as regards the rights of any person who, in

---

[34]

      *Omega Overseas Partners, Ltd. v. Griffith*, No. 13-cv-4202 (RJS), 2014 WL 3907082, at *3 (S.D.N.Y. Aug. 7, 2014) (emphasis added) (quoting 15 U.S.C. § 80b-15).

[35]

      *Id.* at *3-4 (emphasis added).

19

violation of [the IAA], shall have . . . *engaged in the performance of any such contract.*"[36]  Its

argument ignores the corresponding reference to "of any such contract."  The "performance of any

such contract" relates to the performance of a "contract made in violation of [the IAA]" and "every

contract . . . the performance of which involves the violation of [the IAA]."  The portion on which

Two Harbors relies therefore refers back to the two types of contracts proscribed earlier in the

section, a contract that either was formed illegally or that required illegal performance, not any

contract, regardless of whether it is illegal or called for illegal performance.  Its textual argument

thus fails to convince.

   Two Harbors' other arguments are equally unconvincing.  Its contention that

"[l]imiting [§] 215(b) only to persons who make contracts in violation of the IAA and excluding

persons who perform contracts in violation of the IAA is contrary to the congressional intent to

eliminate 'all conflicts of interest'" rests on its same misunderstanding of the statutory text explained

above.[37]  Furthermore, its argument that limiting Section 215(b) claims to contracts that were formed

illegally or required illegal performance "would leave investors like Two Harbors unprotected from

investment advisers like PRCM who breach their fiduciary duties through disloyal and fraudulent

conduct – the opposite of Congress' purpose in enacting the IAA" – overlooks the primary authority

provided to the Securities and Exchange Commission ("SEC") to enforce violations of the IAA.[38]

   Lastly, although there are cases within and outside of this Circuit in which courts have

---

[36]
   Dkt 125 (Def. Opp. Mem.) at 24 (emphasis added) (quoting 15 U.S.C. § 80b-15(b)).

[37]
   *Id.* at 26.

[38]
   *Id.*

"permitted Section 215 claims to proceed irrespective of whether the contracts themselves violated the IAA,"[39] those authorities did so without the benefit of a rigorous analysis as was conducted in *Omega Oversees Partners, Ltd.*, which is quoted above. Indeed, one of the cases Two Harbors references cited a case in which the Supreme Court stated that "§ 215 . . . provides that contracts *whose formation or performance would violate* the [IAA] 'shall be void . . . as regards the rights of' the violator and knowing successors in interest," in contradiction to the proposition for which Two Harbors references that case.[40]

　　　　Accordingly, Two Harbors' counterclaims to rescind the management agreement, its

---

[39]

　　*In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 262 (S.D.N.Y. 2006) (citing cases).

[40]

　　*TAMA*, 444 U.S. at 16 (emphasis added).

　　To the extent that Two Harbors argues that its claims are sufficient because they allegedly violate § 206, the Supreme Court's decision in *TAMA* makes clear that a private cause of action for recision exists only pursuant to § 215. *See also Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1033 (2d Cir. 1992) ("Section 215 of the IAA provides that contracts whose formation or performance would violate the act are void. In [*TAMA*], the Supreme Court held that [§ 215] created an implied private cause of action for rescission of the void contract and restitution *and that this was the sole private remedy available under the [IAA]*.") (emphasis added).

　　Two Harbors contends that, in *TAMA*, "[t]he Supreme Court effectively adopted the plaintiff's latter argument [that an equitable suit seeking the relief provided by § 215(b) for a violation of § 206 is maintainable in federal court] by rejecting a private right of action for 'damages and other monetary relief under § 206' but allowing a private right of action for 'rescission or for an injunction against continued operation of the contract, and for restitution.'" Dkt 125 (Def. Opp. Mem.) at 31. Its only basis for this argument is that the plaintiff's brief before the Supreme Court made that argument. *TAMA* (No. 77-1645), Br. for Respondent at 9, Feb. 2, 1979, 1979 WL 199661 at * 9 ("Even were there doubt as to 'actions at law,' this case, as an equitable suit, is maintainable in the federal court, seeking the relief provided by Section 215(b) for violation of Section 206 of the [IAA]."). The inclusion of an argument in a brief, without any evidence of a Court adopting that argument, does not make that argument the law. There is nothing in *TAMA* to suggest that the Supreme Court adopted that argument in the plaintiff's brief.

voidness defense, and related claims for declaratory judgment and setoff of potential liability ("IAA claims") are dismissed to the extent they are premised on allegations of plaintiffs' "disloyal and fraudulent" actions that are unrelated to any allegations that the management agreement was illegally formed or required illegal performance.

### *The Indemnification and Termination Fee Clauses*

Plaintiffs argue that the indemnification clause and termination fee clause in the management agreement do not violate the IAA essentially because, they claim, the clauses are lawful. In the alternative, they argue that Two Harbors' claims that these clauses and the Second Amendment thereto violate the IAA are time barred. As the Court agrees that these claims are time barred, it does not now address or decide plaintiffs' first argument.

The Second Circuit has determined that "the appropriate limitations period to apply to an IAA action for rescission is either one year from the wrong or one year from the discovery/three years from the wrong."[41] "Discovery takes place when the plaintiff obtains actual knowledge of the facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge."[42]

---

[41]

    *Kahn*, 970 F.2d at 1039.

[42]

    *Id.* at 1042.

    Two Harbors argues that its "[c]ounterclaims are subject to a two-year statute of limitations" because the 1934 Securities and Exchange Act, 15 U.S.C. § 78a *et seq.*, which includes the IAA, sets a limitations period of two years for claims "with an element of fraudulent intent." Dkt 125 (Def. Opp. Mem.) at 32. It further contends that its counterclaims "fall under the Second Circuit's flexible definition of 'fraud,' alleging that the [t]ermination [f]ee [p]rovision and [indemnification clause] were practices that operated as a fraud or deceit and violated the IAA's antifraud provisions." *Id.* at 33. *See also Chang v. Citigroup Inc.*, No.

Two Harbors alleges that the indemnification and termination fee clauses are "inconsistent with the duties that PRCM owes to Two Harbors pursuant to the [IAA]."[43]  Both clauses were included in the management agreement when the agreement was executed in 2009. Its claims that those two clauses violate the IAA therefore accrued at the time the agreement was executed in 2009.  Similarly, its claim that the Second Amendment violates the IAA accrued in 2014, when the amendment was executed.

Two Harbors does not dispute that its claims accrued in 2009 and 2014, respectively. Instead, it argues that the Court should "equitably toll the limitations period while Pine River [Capital] partners were managing Two Harbors as Chairman, CEO, and CIO."[44]  Its argument fails for two reasons.  First, as plaintiffs point out, whether the limitations period applicable to the IAA claims is one/three years as noted above or two/five years as Two Harbors argues, equitable tolling would be unavailable because of the statute of repose. A statute of repose is the outer limitation of a limitations periods – in this case, three or five years from the violation – and is not subject to equitable tolling.[45]  Second, in any event, Two Harbors' basis for equitable tolling fails to convince

---

09-cv-02966 (SI), 2010 WL 520511, at *5 (N.D. Cal. Feb. 6, 2010) ("The statute of limitations for claims under the Investment Advisers Act is two years from discovery of the violation, but in no event later than five years from the violation itself. 28 U.S.C. § 1658(b)(1)."). Even accepting, without now deciding, that the two/five years limitations period were applicable to Two Harbors' counterclaims, its counterclaims based on the two clauses nonetheless would be time barred.

[43]     *E.g.*, Dkt 89  (Def. Answer to Pls. Second Amend. Compl.) at 81-82 ¶¶ 39-40.

[44]     Dkt 125 (Def. Opp. Mem.) at 33.

[45]     *E.g.*, *SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173, 177 (2d Cir. 2016) ("[A]s a statute of repose, § 1658(b)(2) is not subject to equitable tolling."); *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) ("Statutes of limitation

that its claims would merit equitable tolling. The fact that Pine River Capital's executives served as chairman, chief executive officer and chief information officer does not suffice to establish that Two Harbors was under such "adverse domination" by plaintiffs that it could not previously have brought such claims, particularly given that – as plaintiffs note – the Independent Directors were aware of the two clauses since the management agreement was executed in 2009.

Accordingly, Two Harbors' remaining IAA claims based on the two management agreement clauses and the Second Amendment are time barred even applying the longer statute of repose period of five years.[46]

*Two Harbors' Common Law and Tort Claims*

Plaintiffs' remaining arguments concern Two Harbors' common law and tort claims under New York law other than its claim for breach of contract. – Count I (breach of fiduciary duty), Count II (disgorgement under faithless servant doctrine), Count III (gross negligence), Count IV (fraud), Count V (negligent misrepresentation), Count IX (unjust enrichment), Count X (aiding and

---

are normally subject to equitable tolling; statutes of repose normally are not."); *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05-cv-4837 (HB), 2006 WL 399396, at *6 (S.D.N.Y. Feb. 21, 2006) ("The Supreme Court has stated that 'the equitable tolling doctrine is fundamentally inconsistent' with the one-year/three-year statute of limitations of the 1933 and 1934 Acts."); *Chang*, 2010 WL 520511, at *5 ("'The two-year statute of limitations is not subject to equitable tolling. The five-year outer limitations period . . . serves as a statute of repose in lieu of equitable tolling.'") (ellipsis in original) (citation omitted).

[46]

Two Harbors argues that "the IAA [c]ounterclaim for set-off is not time-barred for the additional reason that it 'arise[s] from the same set of facts as the claims in the complaint' and is permitted as a 'setoff against any recovery obtained by the plaintiff' even if the IAA [c]ounterclaims based on the [t]ermination [f]ee [p]rovision and [indemnification clause] are time-barred." Dkt 125 (Def. Opp. Mem.) at 35. Its argument is unpersuasive, including for the reason that in its counterclaim, Two Harbors' claim for setoff of potential liability is premised only on its allegations that the indemnification and termination fee clauses violate the IAA. Dkt 89 (Def. Answer to Pls. Second Amend. Compl.) at 125-26 ¶¶ 204-06.

abetting breach of fiduciary duty), and Count XII (breach of implied covenant of good faith and fair dealing).

*Disgorgement Under the "Faithless Servant Doctrine"*

Plaintiffs argue that the Court should dismiss Two Harbors' counterclaim for disgorgement pursuant to the faithless servant doctrine on the ground that Two Harbors did not adequately plead such a claim.

"New York's faithless servant doctrine holds that '[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.'"[47] "To show a violation of the faithless servant doctrine, an employer must show (1) that the employee's disloyal activity was related to 'the performance of his duties,' . . . and (2) that the disloyalty 'permeated the employee's service in its most material and substantial part.'"[48]

Plaintiffs contend that Two Harbors' allegations are "not sufficiently 'severe' to support [a] faithless servant claim" and that "Two Harbors cannot cite a single case where the doctrine has been applied to two sophisticated business entities entering into a complex contract

---

[47]    *Robinson v. De Niro*, No. 19-CV-09156 (LJL), 2023 WL 4862772, at *55 (S.D.N.Y. May 25, 2023) (quoting *CBRE, Inc. v. Pace Gallery of New York, Inc.*, 2021 WL 1198644, at *11 (S.D.N.Y. Mar. 30, 2021))

[48]    *Sanders v. Madison Square Garden, L.P.*, No. 06 CIV 589 GEL, 2007 WL 1933933, at *3 (S.D.N.Y. July 2, 2007) (emphasis added) (quoting *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200, 203 (2d Cir. 2003)).

worth hundreds of millions of dollars."[49]  Their arguments are unavailing.  Although most faithless

servant claims have arisen in the employer-employee context, the doctrine "'arises out of an *agency*

or employment relationship'"[50]  Plaintiffs' arguments with respect to the sufficiency of Two Harbors'

allegations are inappropriate at this stage.  Two Harbors has made factual allegations that, accepted

as true on this motion, plausibly allege a claim under the faithless service doctrine.

*Two Harbors' Other Counterclaims*

Plaintiffs argue that Two Harbors' remaining claims – Counts I, III, IV, V, IX, X, and

XII – should be dismissed because they are duplicative of Two Harbors' breach of contract claim.

New York courts have dismissed claims  that "arise out of identical circumstances

as [a] cause[] of action alleging breach of contract" and "were based upon identical allegations, and

did not allege that a misrepresentation resulted in any loss independent of the damages allegedly

incurred for breach of contract."[51]  At the same time, "'[i]t is well settled that the same conduct

which may constitute the breach of a contractual obligation may also constitute the breach of a duty

arising out of the relationship created by contract but which is independent of the contract itself.'"[52]

One New York court has explained that:

---

49

   Dkt 126 (Pls. Reply Br.) at 8-9.

50

   *Carco Group, Inc. v. Maconachy*, 718 F.3d 72, 84 (2d Cir. 2013) (emphasis added).

51

   *Doukas v. Ballard*, 135 A.D.3d 896, 897 (2d Dept. 2016).

52

   *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005), as amended (July 6, 2005) (quoting *Mandelblatt v. Devon Stores*, 132 A.D.2d 162, 167–68 (1st Dept. 1987)).

26

"With regard to plaintiff's cause of action for breach of a fiduciary relationship, plaintiff demonstrated that defendants' role as his financial advisor with discretionary authority to manage his investment accounts created a fiduciary duty (see *Rasmussen v A.C.T. Envtl. Servs.*, 292 AD2d 710, 712 [2002]; . . . ). However, plaintiff's claim is based upon the same facts and theories as his breach of contract claim and was properly dismissed as duplicative (*see Kaminsky v FSP Inc.*, 5 AD3d 251, 252 [2004]; *William Kaufman Org. v Graham & James*, 269 AD2d 171, 173 [2000]; *see also Brasseur v Speranza*, 21 AD3d 297, 298 [2005]; *Fesseha v TD Waterhouse Inv. Servs.*, 305 AD2d 268, 269 [2003]). The allegations underlying plaintiff's fiduciary duty claim – based upon defendants' self-dealing, conflict of interests, and failure to advise plaintiff and prudently manage and diversify his portfolio, and encouraging improper loans to plaintiff – are either expressly raised in plaintiff's breach of contract claim or encompassed within the contractual relationship by the requirement implicit in all contracts of fair dealings and good faith (*see 511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002]). As such, plaintiff has not 'set [ ] forth allegations that, *apart from the terms of the contract*' (*EBC I, Inc. v Goldman, Sachs & Co.*, supra at 20 [emphasis added]), the parties 'created a relationship of higher trust than would arise from [their contracts] alone' (*id.*), so as to permit a cause of action for breach of a fiduciary duty independent of the contractual duties . . . ."[53]

---

[53]    *Brooks v. Key Tr. Co. Nat. Ass'n*, 26 A.D.3d 628, 630 (3d Dept. 2006) (emphasis in original) (citations omitted).

Here, the allegations in Two Harbors' counterclaim are "sufficient to show a relationship of trust and confidence that flows from, but is independent of, the [management] agreement."[54] It alleges, for example, that "the relationship between PRCM and Two Harbors gave rise to fiduciary duties owed by PRCM to Two Harbors" because PRCM acted as Two Harbors' "manager and investment adviser and exercised substantial discretion and authority to manage all aspects of Two Harbors' business, including by providing Two Harbors with its executives and other personnel, managing Two Harbors' investments, and running Two Harbors' day-to-day operations."[55] The Court is obliged to accept Two Harbors' factual allegations with respect to the nature of plaintiffs' roles and responsibilities and the nature of their relationship with Two Harbors as true for purposes of this motion. Accordingly, although Two Harbors' breach of contract claim is premised on the same alleged misconduct, the alleged investment advisory relationship between plaintiffs and Two Harbors "imposed on [plaintiffs] also a duty to act with care and loyalty independent of the terms of the contract."[56] Two Harbors' claim against PRCM for breach of fiduciary duty therefore is not duplicative of its contract claim, and it is sufficient to allege primary violations for purposes of its claim against Pine River Capital for aiding and abetting PRCM's alleged breaches of fiduciary duty. The same reasoning and conclusion apply to Two Harbors' counterclaims for gross negligence, fraud, negligent misrepresentation, implied covenant of good

---

[54]

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.*, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005), as amended (July 6, 2005).

[55]

Dkt 89 (Def. Answer to Pls. Second Amend. Compl.) at 115 ¶ 157.

[56]

*Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 471 (S.D.N.Y. 2007).

28

faith and fair dealing, and unjust enrichment.[57]

      The Court has considered the parties' other arguments and found them all unpersuasive.

### *Conclusion*

      For the foregoing reasons, plaintiffs' motion for judgment on the pleadings (Dkt 117) dismissing the counterclaims and certain affirmative defenses is granted in part and denied in part. It is granted with respect to Two Harbors' counterclaims that are based on the Investment Advisors Act (Counts VI, VII, VIII, and Two Harbors' second affirmative defense). It is denied with respect to Two Harbors' common law and tort counterclaims (Counts I-V and IX, X, and XII) except to the extent that the unjust enrichment counterclaim (Count IX) relies on Two Harbors' argument that the management agreement is invalid. It is denied in all other respects.

      Two Harbors' application in the alternative for leave to amend its counterclaims should the Court grant any part of plaintiffs' motion is denied with respect to its counterclaims under the Investment Advisers Act and is denied as moot with respect to its other counterclaims.

      SO ORDERED.

Dated:      August 10, 2023

                                       Lewis A. Kaplan
                                United States District Judge

---

[57] Two Harbors' unjust enrichment counterclaim is dismissed to the extent it is based on challenges to the validity of the management agreement for the reasons discussed above. "Unjust enrichment may be pled in the alternative to a contractual claim 'if there is 'a bona fide dispute concerning [the] existence of a contract or whether the contract covers the dispute in issue.'" *PRCM Advisers LLC*, 2021 WL 2582132, at *18 (citation omitted).